BREITZKE *v*. BANK OF GRAND PRAIRIE.

Opinion delivered June 19, 1916.

1. CORPORATIONS—FINANCIAL REPORT—DEFAULT OF OFFICERS—TIME WHEN LIABLE—CIVIL LIABILITY—CRIMINAL LIABILITY.—The civil liability imposed by statute upom the officers of a corporation for failure to file the annual statement, "for all debts of such corporation contracted during the period of any such neglect or refusal," includes only those debts which were contracted while the individuals were officers of the corporation. When the last of the optional dates for making the report specified in the statute has expired, these officers are also liable criminally for each day thereafter that they fail to make such report until they go out of office, but no longer.

2. CORPORATIONS—ANNUAL REPORT—LIABILITY OF NEWLY ELECTED OFFICERS.—The duties and responsibilities of the newly-elected president and secretary begin when they take the places of the old officers; and it is their duty to file the annual statement, after the lapse of a reasonable time after their discovery that such statement has

not been filed. The dereliction attaches to the ones who hold the offices of president and secretary, and is a continuing dereliction so long as the statute is not complied with.

3.  CORPORATIONS—ANNUAL STATEMENT—LIABILITY OF OUTGOING OFFICERS.—Outgoing officers of a corporation who have neglected to file the annual statement for the same, are not liable for debts contracted by the corporation, after they went out of office. But they may be liable, after going out of office for debts contracted, while they were yet in office.

4.  CORPORATIONS—ANNUAL STATEMENT—NEWLY ELECTED OFFICERS.—It is the duty of the newly elected president and secretary of a corporation, to file the certificate required by statute, within a reasonable time after they assume the duties of their offices.

Appeal from Prairie Chancery Court; *John M. Elliott,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit was instituted by the appellee against the Hazen Creamery Company, a corporation, and appellants, the president and secretary, respectively, of such corporation, to foreclose certain mortgages and to obtain a personal judgment against the appellants for certain sums amounting in the aggregate to $5,000, evidenced by a promissory note for that sum dated March 10, 1914. After setting out the different items of indebtedness that constituted the aggregate sum of $5,000, for which the note was executed by the creamery company to the appellee, giving the dates and amounts, it was alleged in the complaint that the appellants, as president and secretary of the corporation, neglected to comply with the statute requiring them to file a certificate showing the financial standing of the corporation of which they were officers in the years 1913 and 1914, and that the indebtedness sued on accrued during the period of such neglect.

Appellants denied that they had failed to comply with the statute as alleged, and denied that the indebtedness to the appellee was contracted during the period of any neglect or refusal on their part; and denied that they were indebted to the appellee in the sum sued for. They further set up that the note sued on was for indebtedness

of the creamery company to the appellee that existed before appellants became officers of the creamery company, and that said indebtedness was not contracted during any period of default on their part to file the certificate showing the condition of the financial affairs of the corporation of which they were officers. They further set up that the note in suit was executed by the appellants as president and secretary of the corporation only after the appellee had agreed with the appellants that it would not hold them personally liable for the debt or any part thereof; that but for such agreement they would not have signed the note sued on. They further set up that the creamery company was incorporated in April, 1912, and that default was made in filing the statement as required by the statute in August, 1913, by the then president and secretary of the company; that appellants were elected to their respective offices October 8, 1913, and that they were not required by law to file any certificate with the county clerk of Prairie County until August 15, 1914; that the debt for which the note was given was contracted prior to August 15, 1914; they further alleged that prior to February 15, 1914, the sum of $1,000 was already due the plaintiff, evidenced by a promissory note executed long prior to the time when the appellants became officers of the creamery company; that prior to February 15, 1914, the sum of $3,051.38 of the indebtedness evidenced by the note sued on was due the appellee in the form of an overdraft, and that only $948.62 of the note in suit was contracted after February 15, 1914. They alleged therefore that if they were liable at all under the law, their liability would only be for the sum of $948.62. They further set up that appellee was estopped by representations made by its officers at the time of the execution of the note in suit to the effect that they would not hold appellants liable as officers for the indebtedness sued on.

The testimony shows that appellants Breitzke and Kumpe were elected president and secretary, respectively, of the creamery company October 8, 1913. At that

time the company owed the bank the sum of $1,000, evidenced by a note, and the further sum of $1,476.06 in overdraft. After appellants became officers of the company its overdrafts on the bank varied, increasing and diminishing from time to time. Kumpe, the secretary, testified that "at lots of times the overdraft was cut down to practically nothing, but they made a new overdraft each month. The 20th of the month was pay day. On that day they would have the overdraft taken up—everything covered—and they would issue checks which would cause another overdraft. The checks would be issued for the pay roll of the month preceding the 20th. At times they would pay out on the 20th, and there would be times that there would be no overdraft until the pay roll came in and they would make a new overdraft. That occurred between October 8, 1913, and March, 1914."

It was shown that as early as October 20, 1913, after appellants became officers of the company, the overdrafts were reduced to as low a sum as $140.38. On February 15, 1914, the company owed the bank a note in the sum of $1,000 and an overdraft in the sum of $3,051.38, making a total indebtedness of $4,051.38, and interest, which had been contracted prior to that date. The sum of $491.03 was contracted after February 15, 1914, and prior to March 10, 1914, the date when the note in suit was executed. The note, as stated, covered all prior indebtedness of the company to the bank, with accrued interest as of that date. It was admitted that the note represented a valid indebtedness of the company to the appellee.

The court rendered judgment against the creamery company for the amount sued for, and also rendered a judgment against the appellants for the sum of $4,360, amount of principal and interest from March 1, 1914, to date of decree. Appellants seek by this appeal to reverse the judgment.

*Richard M. Mann* and *Price Shofner,* for appellants.

1. Appellants were not personally liable. The period of "neglect or refusal" to file the certificate re-

quired does not begin with the election of the president
and secretary nor end with their resignation.    Kirby's
Digest, § § 848, 849; Acts 1909, p. 643; 68 Ark. 433; 75
*Id.* 107; 101 U. S. 188; 133 Pac. 681; 2 Morawetz on Priv.
Corp. (2 ed.), § 908; 88 Ind. 254; 107 Fed. 188; 96 Ark.
268; 114 Fed. 290.    This period did not begin until Au-
gust 15, 1914.

2.    Appellee is estopped by its agreement *not* to hold
appellants personally liable.

*Trimble & Williams,* for appellee.

1.    Appellants are clearly personally liable.    The
$4,000 was a new indebtedness contracted by overdrafts
after they assumed their offices, and they failed to file the
certificate required by law.    The act is not penal, and
hence strictly construed.    95 Ark. 330; 68 *Id.* 436; 2
Thompson on Corp. (2 ed.), § 1781; 96 Ark. 273; 75 *Id.*
111; 21 N. Y. 264.

2.    No estoppel is shown.

WOOD, J., (after stating the facts).    (1)    The Hazen
Creamery Company (hereafter, for convenience, called
company) was incorporated March 16, 1912, under the
provisions of chapter 31 of Kirby's Digest.    Under the
law it is the duty of the president and secretary of every
business corporation, annually on or before the 15th day
of the months of February or August, to file with the
county clerk of the county in which the company trans-
acts its business a certificate showing the condition of the
financial affairs of the corporation on the first day of
January or July next preceding, in the particulars speci-
fied in section 848 of Kirby's Digest.    A failure or refusal
upon the part of the president or secretary of a corpora-
tion to comply with the above provisions renders them
jointly and severally liable for all debts of the corporation
contracted during the period of any such neglect or re-
fusal, and they are also guilty of a misdemeanor, punisha-
ble by a fine of $500, for each and every day that they neg-
lect to comply with the above provisions.    Act 222, Acts
of 1909, page 643.

In *Griffin* v. *Long,* 96 Ark. 268-273, concerning this statute, we said: "The reason of the statute is to require corporations to make such public showing of their affairs as will enable those dealing with them to determine whether they can safely give them credit." And in *Beekman Lumber Co.* v. *Ahern,* 75 Ark. 111, speaking of this act, we said: "There is nothing in the act that requires an officer who has neglected to file the statement within the time named in the act to wait until after the first day of the next succeeding July or January before filing the statement. On the contrary, as the act declares that, upon the failure to file the statement, within the time named, the officer becomes liable for all debts of the corporation contracted during the period of such neglect, we are of the opinion that it was the intention of the law to make it to the interest of the officer to file the statement at as early a date as possible, when he discovers his oversight, and when he does file such statement, even though it be after the dates named in the act, that he is not liable for debts thereafter contracted by the corporation until he makes another default in the filing of another statement."

While the president and secretary are made individually liable, both civilly and criminally, for a failure to comply with the provisions of the above statute, yet the duty which the statute imposes attaches to them as officials of the corporation, and not as individuals. It is an official duty which these officers of corporations owe to those of the public who may have dealings with such corporations. The duty attaches to the individual only by virtue of the office he holds in the corporation. When there is a failure to comply with the statute the dereliction continues on the part of the individual only so long as he is an officer of the corporation. When his relation as such is severed he has no longer any duty to make and file the certificate required by the statute, and he has no power to do so.

The civil liability imposed upon these officers "for all debts of such corporation contracted during the period of any such neglect or refusal," therefore includes only those debts which were contracted while the individuals were officers of the corporation. When the last of the optional dates for making the report specified in the statute has expired, these officers are also liable criminally for each day thereafter that they fail to make such report until they go out of office, but no longer.

(2) The duties and responsibilities of the newly elected president and secretary begin when they take the place of the old. One of these duties would be to acquaint themselves with the financial affairs of the corporation and to know whether or not the statute requiring the filing of the annual certificate had been complied with by their predecessors. If it had not, then it would be the duty of the new officers to file the same as soon as they ascertained that fact, after a reasonable time has elapsed for making an investigation of the financial affairs of the corporation. The newly elected officers from that time, so to speak, step into the shoes of their predecessors in office, and their liability, both civil and criminal, for dereliction in failing to make the certificate is the same as their predecessors would have been had they continued in office. The dereliction, as we have seen, attaches to the ones who hold the offices of president and secretary and is a continuing dereliction so long as the statute is not complied with.

Unless the newly elected officers, succeeding old ones, were required to make the certificate within a reasonable time after assuming the duties of their offices there might be a long interval in which the financial standing of business corporations would not be made known to the public. To illustrate, if the first elected president and secretary of such corporation should let the 15th day of February or the 15th day of August go by without filing the certificate, and thus fail to comply with the statute, and if they then were immediately displaced by new officers,

these newly elected officers could wait until the next annual period before making the certificate required by law and there would be an interval of a year wherein no certificate was filed and debts could be contracted by the corporation and neither the old nor the new officers liable therefor. This would frustrate the salutary purpose of the law, which is to require business corporations, through their president and secretary, to advise the public by these annual certificates of their financial standing.

(3)   But counsel for appellants contend that the outgoing president and secretary, having failed to comply with the statute while in office, would continue liable for debts of the corporation contracted until the next annual date for filing the certificate; that the period of "such neglect or refusal" continues till that time. To support this contention, they cite and quote at length from *Providence Steam Engine Co.* v. *Chas. Hubbard,* 101 U. S. 188, 25 L. Ed. 786. In that case it was held that where an outgoing president (under a statute fixing the same dates as ours for filing the certificate) failed to file the certificate while he was in office on the 15th of February, and retired without doing so, that the incoming president who was elected "less than two months prior" to the 15th of August—the next annual date—would not be liable for a debt of the corporation contracted before he took his office, nor during the short period of less than two months between the date of his election and August 15—the date when he had to file his certificate—that he was not liable for such debt even though his default continued after that date, because he was not in default during the period when the debt was contracted. While the statute under review in that case is similar to ours, the facts are quite different. Much that is said in the opinion is in harmony with the views we have expressed, and we do not regard the case as authority to support the contention of counsel. But even if it were, we could not follow it, for we could never hold, under our statute, that the retiring president and secretary who had failed to file the certifi-

cate would be liable for debts contracted by the corporation after they went out of office.  They would be liable and could be sued after they went out of office for the debts contracted during the period of their default, which would continue until their retirement if they neglected till that time to file the certificate.  If the civil liability could be continued for debts created thereafter, then the criminal liability would also continue, and thus individuals could be civilly liable for debts they did not contract, and had no power to prevent and could be severely punished criminally for an act they did not and could not do:

Corporations can only perform their duties to the public through their officers and agents, and as shown in *Griffin* v. *Long*, and *Beekman Lumber Co.* v. *Ahern, supra,* the intention of the Legislature was to impose a duty upon corporations to make these certificates showing the financial standing of the corporation, through their president and secretary; and to make sure that the duty was discharged, the Legislature made these officers individually liable for failing to perform such duty.  Primarily the duty under the statute is one which the corporation owes the public, and one which the Legislature has designated must be performed by the president and secretary of such corporation.  If it is a duty that inheres in the office under the statute, then it is one which these officers, upon assuming their offices, must perform as soon as they can reasonably do so where it has been neglected by their predecessors.

In this view of the statute, there is no difference in principle between this case and that of *Boughton* v. *Otis,* 21 N. Y. 261-264, where the court said:  "A board of trustees guilty of default in January, and retiring from office, is liable for all antecedent debts and for those only; and that the successors, if they continue the default until the next January, and no longer, are liable for the debts afterward contracted during that year, and for no other. If the persons succeeding to office promptly obey the requirement of the act, they will escape all liability, and it

is plainly just that they should, because there is no failure of duty on their part. If they do not, they very properly incur the hazard of the debts which they themselves as trustees contract. This hazard they might be quite willing to incur; but there is neither principle nor policy in making them responsible for the acts and defaults of their predecessors. The general policy of the act is immunity from personal liability, but this is attended by certain conditions demanding the personal observance of the trustees."

(4) Applying the above doctrine to the facts of this record, it appears that the company was incorporated March 16, 1912; that its then president and secretary did not file any certificate as long as they were in office. The appellants were elected October 8, 1913; they filed no certificate until October, 1914. Thus it will be seen that appellants allowed about a year to elapse before filing the certificate. They contend that under the statute it was optional with them to file either on the 15th of February or the 15th of August succeeding their election, and that their period of delinquency therefore did not begin until August 15, 1914. But, as we have shown, this was not a correct view of the statute. It was the duty of appellants to file the certificate within a reasonable time after they assumed the duties of their offices, and the finding of the chancellor that the amount of the debts for which the decree was rendered were incurred during the period of their delinquency is not against the preponderance of the evidence. A clear preponderance of the evidence showed that the indebtedness for which the decree was rendered was in the shape of overdrafts on the bank which, with interest from March 1, 1914, up to the date of the decree, amount to the sum of $4,360, for which the decree was entered. Appellants waited too long to file the certificate and these overdrafts represented an indebtedness that accrued during the period of their default, for there is undisputed testimony in the record to the effect that at times when the pay rolls were completed

on the 20th of each month the overdrafts would amount to practically nothing.

There is nothing in the record to estop appellee from claiming judgment against the appellants. It is conceded that at the time appellee's cashier told appellants that they would not be held personally liable on the note of $5,000, that the parties did not have in mind the statutory liability of appellants. This is the correct view of the evidence, and appellee was therefore not estopped from maintaining this suit for the statutory liability.

The decree is affirmed.

KIRBY, J., dissenting.