STATE, RESPONDENT, *v.* YALE OIL CORPORATION OF SOUTH DAKOTA, APPELLANT.

(No. 6,755.)

(Submitted November 14, 1930. Decided December 12, 1930.)

[295 Pac. 255.]

*Mr. P. F. Leonard,* for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, for the State, submitted a brief; *Mr. Ketter* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In December, 1929, the state commenced action against the Yale Oil Corporation of South Dakota by the filing of a complaint in which the following facts are alleged:

In 1926 and 1927 defendant operated a gasoline refinery at Miles City and service stations at different points in the state and, prior to January 1, 1927, had distributed 82,419 gallons of gasoline to its service stations, which gasoline was then deemed sold by defendant. Defendant paid a license tax, for engaging in the business of a distributor, in an amount equal to two cents per gallon of gasoline thus "sold" in 1926.

Under the provisions of Initiative Measure 31 (Laws of 1927, p. 604), effective January 1, 1927, the license tax to be paid thereafter by both distributors and dealers must equal three cents per gallon on all gasoline which may be considered in determining the license tax due.

During the month of January, 1927, defendant through its service stations disposed of the gasoline so on hand and reported the sales to the state, but refused to pay an additional license tax amounting to one cent per gallon, or $824.19. After May 1, 1927, plaintiff demanded of defendant payment of this amount, with penalty and interest added, which demand was refused. These facts are admitted by answer filed.

The complaint further alleges the following ultimate facts or conclusions of law based on the fact condition shown: The sales made in January constituted defendant, operating service stations, a dealer and rendered it liable for the license tax demanded, and, having failed to pay that amount within thirty days after it became due, defendant is liable to a penalty of one per cent and interest on the tax, and penalty at one per cent per month until paid, making a total "due and unpaid" of $906.60. These allegations are denied by the answer.

Defendant having thus admitted all facts alleged and joined issue only as to questions of law, plaintiff moved for judgment

on the pleadings, which motion was sustained and judgment entered. Defendant has appealed from the judgment.

1. Manifestly, as the Initiative Measure, above, was not made ▇ retroactive, and as the defendant paid the full distributor's tax imposed upon it under the law as it existed at the time the gasoline distributed was "deemed" sold to its service stations, the state cannot reach back in 1926 and collect an additional license tax from the defendant, as a distributor, merely because the gasoline it distributed was thereafter sold to users at a time when the law required the total license tax to equal three cents per gallon on all gasoline sold in the state.

2. However, during all of the period covered by the ▇ allegations of the complaint, the law declared that "the term 'distributor' means and includes every person who engages in the business of refining, manufacturing * * * or * * * importing * * * gasoline * * * and selling the same in this state," and "the term 'dealer' means and includes every person other than a distributor, who engages in the business of * * * selling gasoline * * * within the state." (Sec. 2381, Rev. Codes 1921.)

Roughly put, then, the distributor is the wholesaler, the dealer the retailer, of gasoline in this state. The phrase "other than a distributor," found in the definition of "dealer," means no more than that those selling only at wholesale are not to be considered dealers, although, otherwise, they would come within the definition, but does not mean that any person, including a corporation (sec. 2381, above) cannot, at the same time, be a distributor and a dealer.

When, therefore, this defendant operated a refinery from which it distributed gasoline to its service stations, the distribution was deemed a sale and, the transaction being that of a wholesaler, defendant became immediately liable for a license tax for engaging in the wholesale business of selling gasoline, in an amount equal to two cents per gallon of gasoline so "sold." (Sec. 2382, Rev. Codes 1921.) Thus it was immaterial whether defendant sold gasoline to a stranger

engaged in the business of retailing it to users, or distributed it to its service stations for a similar purpose. But when defendant thereafter engaged in the business of selling the gasoline at retail, in competition with strangers to whom it, or other distributors, had sold gasoline to supply service stations, it became a "dealer" and became liable to pay any license tax which could legally be imposed upon any dealer in the state.

There is no more reason for exempting defendant from the payment of a dealer's license tax for the privilege of engaging in the business of operating service stations, because it manufactures the gasoline it sells, when a tax is exacted from others engaged in the like business, than there would be to hold that a manufacturer of soft drinks who pays the license tax required by section 2436, Revised Codes 1921, is exempt from paying the license tax imposed by section 2589, Id., upon those who operate "soft drink establishments," because he sells his manufactutred products in such an establishment, operated likewise as an independent venture. In each instance, in theory at least, there is a wholesale and a retail license, or occupation, tax, imposed on each of those engaging in the business described, each independent of the other. The legislature might have imposed a license tax upon both wholesalers and retailers, for the privilege of engaging in such business, fixed as to amount and in nowise interdependent.

3. The question next arises as to whether, under the provisions of our statutes regulating the sale of gasoline, this defendant, operating as a retailer, is liable for any further license tax, it, operating as a wholesaler, having paid the license tax then required of it.

From what has been heretofore said it is apparent that the fact that the distributor's tax was paid would not relieve the dealer from paying his tax in full, unless we find in the Act itself such relief.

Section 1 of the Initiative Measure, above, amending section 2382 as amended theretofore, requires every distributor to "pay for the year 1927 * * * a license tax for en-

gaging in and carrying on such business in this state in an amount equal to three cents for each gallon of gasoline refined * * * in this state * * * or shipped, transported or imported by such distributor'' and distributed or sold, and provides that ''all gasoline delivered by any distributor to any of his service stations in this state shall be deemed to have been sold and shall be treated and considered in computing such license tax, * * * .''

By section 2 of the Initiative Measure, amending section 2383 as theretofore amended, every dealer is required to pay a license tax for engaging in his business, also equal to three cents per gallon of gasoline sold by him, but this section contains the proviso that ''no gasoline sold by such dealer, which was purchased by him from a producer or distributor, who has paid the tax thereon, shall be included or considered in determining the amount of such license tax * * * , but only such gasoline as was shipped, transported or imported into this state by such dealer * * * .''

While the law, in terms, requires a license tax from each distributor and dealer for the privilege of doing business in this state, the tax is, in effect and in common parlance, a ''gasoline tax,'' and the law is so framed that, from January 1, 1927, on, the state shall receive three cents per gallon on every gallon of gasoline sold in the state, whether manufactured in, or shipped into, the state, and whether paid by the distributor or dealer.

Analyzing the sections of the Initiative Measure above, we find the clear intention that, while a license tax is required of both the distributor and the dealer, there is to be no double taxation on the gasoline sold, but, in so far as it may be imposed, the full tax to be paid to, and received by, the state is three cents on each gallon sold in the state during the year or any part thereof.

Reading the above proviso (sec. 2) in the light of the clear intention of the legislature, and bearing in mind that the tax on the distributor and that on the dealer are separate and distinct imposts, it is clear that *the* tax paid by a dis-

tributor which will relieve a dealer from further payment, is the license tax for which provision is made in section 1 of the measure—a license tax "in an amount equal to *three* cents for each gallon" sold or distributed by the distributor. Had *the* license tax, required by section 1 of the measure, been paid by the distributor, the gasoline distributed to defendant's service stations could not have been considered in determining the license tax imposed on defendant for January, 1927, as a dealer. However, but two-thirds of that license tax was paid, and, as the tax is an occupation tax imposed for the privilege of doing business in the state, it is immaterial whether the shortage comes from the sale of gasoline on which no tax was paid, or from the payment of a less amount than the law requires to be paid at the time the dealer's license is collectible. Therefore, while the law does not provide for a tax computed at one cent per gallon, such an amount is still due on the license tax payable for the month of January, and defendant's license tax was properly computed. This was the conclusion reached by the attorney general on a like question propounded to him by the State Board of Equalization in 1927. (Attorney General's Report 1926–1928, p. 53.)

This adjustment of the license tax due places all dealers for the period named on an equal basis, and exacts but the balance due from a dealer under a valid tax law; there is no merit in the contention that such an exaction violates either the due process clause or the equal protection clause of the federal Constitution.

4. Finally, defendant contends that the complaint herein does not state a cause of action, as the Initiative Measure under which it is sought to collect the balance of the license tax due, was repealed by Chapter 92, Laws of 1929, if not by Chapter 19, Laws of 1927, before this action was commenced, and the right to prosecute the action fell with the measure, as neither of the later Acts contains a saving clause.

However, Chapter 19, Laws of 1927, did not mention the initiative measure and nothing therein contained conflicts with

its provisions in this regard; the only change in the law there effected, in so far as this case is concerned, is that the distinction between distributors and dealers is removed; all persons engaged in both wholesale and retail transactions are considered dealers, but the method of computing and collecting the license tax remains the same.

Chapter 92, Laws of 1929, does not repeal, but merely amends, the existing laws, including the Initiative Measure, and thus recognizes the fact that that measure was still in effect at the time of this amendment to the existing laws. This Act restores the distinction between distributors and dealers and increases the license tax, for a stated period, to an amount equal to five cents per gallon.

The true rule, in this state, is that where a section or a part of a statute is amended, it is not to be considered as repealed and enacted in its new form. The portions which are not amended are considered to have been in force from the time of the first enactment. (Sec. 93, Rev. Codes 1921; *Snidow* v. *Montana Home for the Aged,* ante, p. 337, 292 Pac. 723.) There has, therefore, been neither implied nor express repeal of the measure under which this action was instituted, and, consequently, the complaint states a cause of action.

For the reasons stated, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, being disqualified, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied January 21, 1931.

Cause appealed to supreme court of the United States April 14, 1931.