CONTINENTAL SUPPLY CO., APPELLANT, *v.* ABELL ET AL., RESPONDENTS.

(No. 7,018.)

(Submitted March 15, 1933.   Decided April 20, 1933.)

[24 Pac. (2d) 133.]

Mr. *Louis P. Donovan* and Mr. *Henry McClernan,* for Appellant, submitted a brief; *Mr. Donovan* argued the cause orally.

152

*Messrs. Walchli & Korn,* for Respondents W. G. Dewey and Henry Good, submitted a brief; *Mr. Daniel J. Korn* argued the cause orally.

154

156

*Messrs. Murphy & Whitlock,* of Counsel for Respondents on Motion for Rehearing.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by the plaintiff, the Continental Supply Company, a corporation, from a judgment of dismissal entered on its refusal to further plead after the demurrer of the defendants W. G. Dewey and Henry Good to the complaint had been sustained.

The facts alleged in the complaint are substantially as follows: The Abell Oil Company was incorporated August 31, 1926, and has since "operated for profit"; it has a capital stock. During the year 1927 the defendants named were directors of the corporation and were charged with the duty to file with the county clerk of Flathead county, on or before March 1, 1927, a report of the financial condition of the corporation as it existed on December 31, 1926, under the mandate of section 6003 of the Revised Codes of 1921 "and the laws amendatory thereof and supplemental thereto." This duty the defendants failed to perform, either before the specified time or at all.

Between May and September, 1927, during which period the defendants were directors of . the Abell Oil Company, the

plaintiff sold and delivered to the corporation, at its special instance and request, merchandise consisting of oil-well drilling supplies and equipment of the value of $6,162.32, for which the corporation agreed to pay, but only $1,227.75 was paid thereon. In September, 1928, plaintiff brought action against the Abell Oil Company for the balance of $4,934.57, with interest, costs and attorneys' fees, for the foreclosure of a lien declared on certain oil and gas leaseholds, and secured judgment for a total of $5,808.86, and decree of foreclosure and sale. The sale was had and the net proceeds credited upon the judgment, and a deficiency judgment was entered against the Abell Oil Company for $5,711.11. No part of this judgment was paid, and on June 3, 1929, the plaintiff instituted this action against the directors.

The question presented is as to whether the defendant directors are liable under the law for the amount of the deficiency judgment based on a debt incurred in 1927, while the corporation and the directors were in default in failing to file the 1927 report.

1. Section 6003, Revised Codes of 1921, before amendment required such a corporation as the Abell Oil Company to file its annual account "by March 1, of each year hereafter," and that, if the report was not filed, "the directors * * * shall jointly and severally be liable for all debts or judgments of the corporation then existing, or which may thereafter be in anywise incurred until such report shall be made and filed."

This statute was amended in 1927 by omitting the words "then existing or." (Chap. 5, Laws 1927.) The Act of 1927 provides that the required report shall be filed "by March 1 of each year hereafter." It was approved February 2, 1927, but, as it does not prescribe a different time, it did not take effect until July 1, 1927 (sec. 90, Rev. Codes 1921), and has no retroactive effect. Section 6003, above, was therefore controlling with reference to the default of 1927.

Although the company had been in existence but a few months, it was nevertheless required to make a report on the first due date after the thirty-first day of December of

the year in which it was organized. (*Garrison* v. *Howe,* 17 N. Y. 458.)

2. The defendants contend that, as our statute imposes ██ ██ liability upon the directors on default for ''all debts or judgments'' of the corporation, the reduction of the debt to judgment, which became final prior to the commencement of the action, fixed the time the liability would attach, and that the complaint is insufficient in that it fails to allege a default for the year 1928, or that the defendants were directors in 1929, when the judgment became due and payable by the corporation.

Under similar Acts imposing liability upon the directors for ''all debts incurred,'' but omitting judgments, it is correctly held that the liability is for the ''debt'' voluntarily contracted, and that no action could be maintained on a judgment; that as to the directors the judgment does not exist and could not be used as even prima facie evidence of the existence of the debt. (*Chase* v. *Curtis,* 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038, and cases cited therein.) But does the fact that our statute imposes liability for ''all debts or judgments'' render this rule inapplicable and require suit on the judgment whenever a *debt* has been reduced to *judgment?* We think not.

The purpose to be served in requiring the filing of a report showing the assets and liabilities of a corporation is to enable those contemplating dealing with the corporation to ascertain whether or not it is a good risk. On discovering that the corporation has not filed its report, a prospective creditor may still feel safe in extending credit by virtue of the directors' liability.

It seems that Montana is the only state imposing liability for ''judgments.'' Up to 1907 the liability was for all ''debts'' then existing or thereafter incurred (sec. 451, Civ. Code 1895, amended by Chapter 63, Laws 1907). If defendants' construction of the Act correctly interprets the intention of the legislature, no additional liability was imposed by the Act of 1907, for all directors would be liable, under the old Act, for

debts existing and which might be reduced to judgment. The reduction of a debt to judgment is analogous to the taking of a note for the amount of the debt; in either case the debt is merged in the new form of indebtedness, but is not paid or destroyed.

Where a corporation gave its note for a debt, the action on the directors' liability is held to be on the "debt," rather than the note, and the time the debt was incurred is controlling. (*Williams* v. *Hilger*, 77 Mont. 399, 251 Pac. 524; *First Nat. Bank* v. *Cottonwood Land Co.*, 51 Mont. 544, 154 Pac. 582; see, also, *Garrison* v. *Howe*, supra.)

While a judgment constitutes a "debt" (14A C. J. 204), it is not a "debt incurred" at the time of its entry, within the meaning of the statute, but rather the evidence of that debt (*Tabor* v. *Commercial Nat. Bank*, 62 Fed. 383, 10 C. C. A. 429); consequently, while an action may be maintained on the basis of the directors' liability for a debt which has been reduced to judgment, the complaint must allege facts showing that the debt itself was incurred at a time fixing the liability during the period of default relied upon (*Sherman* v. *J. S. Brown Mercantile Co.*, 78 Colo. 335, 241 Pac. 724; *Weber* v. *Draper*, 170 Mich. 550, 136 N. W. 596, Ann. Cas. 1914B, 149).

We must, therefore, look further for the reason for the amendment adding liability for "judgments" of the corporation. The reason is to be found in the discussion of Judge Davis, of the federal district of New Jersey, who declares that Montana is the only state imposing the liability for "judgments," and that a judgment does not change the character of the obligation which is simply merged in the judgment and, therefore, under a statute imposing liability only for debts incurred, the action is on the debt *ex contractu*, based upon a "voluntary transaction," citing *Chase* v. *Curtis*, supra; consequently, although a judgment is a "debt," a person securing a judgment in a tort action could not enforce liability therefor. (See, also, *In re Putnam*, (D. C.) 193 Fed. 464.)

When, therefore, the legislature of Montana added "judgments" to "debts," it intended to impose a liability other than that for judgments obtained in actions for debt, and, as a judgment in a tort action would not support enforcement of directors' liability, we have a class of judgments which, by the amendment, constitutes an added liability and explains the action of the legislature. Thus analyzing the statute, Judge Davis sums up: "It was perfectly clear, before the addition of the word 'Judgments' to the statute, that directors were liable for the debts of the corporation * * * and for judgments based upon its debts. It must have been intended to increase the liability of directors by adding judgments, including torts, to the liability already existing. * * * The plain interpretation of the language forces this conclusion." (*Northern Pac. R. Co.* v. *Crowell,* (D. C.) 245 Fed. 668, 678.) Thus we have, under the statute, liability for the "debts" of the corporation, whether reduced to judgment or not, and liability for "judgments" based on causes of action other than upon debts incurred. The present asserted liability falls within the first class, and the plaintiff was required to show that liability, not at the time the judgment was secured, but rather at the time the debt was incurred; this it did by setting up the manner and time of its incurrence, in 1927.

3. The question then arises as to the effect of the amendment of 1927, upon plaintiff's right to enforce the liability in the year 1929.

The directors' liability statute has been amended several times. Section 6003, Revised Codes 1921, is the Act as it appears in Chapter 189, Laws of 1919, amending Chapter 140, Laws of 1909; the effect of this amendment has been twice passed upon by this court. Chapter 140, Laws of 1909, required the filing of the corporate report "annually, within twenty days from and after the thirty-first day of December." Chapter 189, Laws of 1919, declares that the existing law shall "be amended so as to read as follows"; and provides that the report must be filed "by March first of each year hereafter"; that "all Acts and Parts of Acts in conflict herewith are

hereby repealed," and that it shall become effective on ap proval; it was approved on March 10, 1919.

In 1919 the First National Bank of Brockton brought action against the directors of the Lohmiller Mortgage Company on a note given by the corporation in 1918 and due April 20, 1919, alleging failure to file a report for 1919, either under the old or the new law. The trial court overruled the demurrer to the complaint, but was reversed on the authority of *Continental Oil Co.* v. *Montana Concrete Co.*, 63 Mont. 223, 207 Pac. 116, 118, which this court held to be "identical in principle," though it dealt with the amendment of a different Code provision. (*First Nat. Bank* v. *Cosier*, 66 Mont. 352, 213 Pac. 442.)

In *First Nat. Bank* v. *Barto*, 72 Mont. 437, 233 Pac. 963, 964, this court declared that "Chapter 140, Laws of 1909, was repealed by Chapter 189, * * * Laws of 1919, [which] * * * deprived a creditor of any right he might have had to enforce a director's liability under the prior statute."

The basis for these decisions is found in the general rules prevailing in all jurisdictions, in the absence of statutory mandate to the contrary, and declared by this court in prior opinions, to the following effect:

(a) Statutes imposing liability upon directors for the failure to obey the mandate of the law are penal in character (*Butler* v. *Peters*, 62 Mont. 381, 205 Pac. 247, 26 A. L. R. 560), or they are "penal" in their nature because they were not known to the common law (*Gans* v. *Switzer*, 9 Mont. 408, 24 Pac. 18), and, therefore, must be strictly construed (*Wethey* v. *Kemper*, 17 Mont. 491, 43 Pac. 716; *Daily* v. *Marshall*, 47 Mont. 377, 133 Pac. 681; *First Nat. Bank* v. *Cottonwood Land Co.*, 51 Mont. 544, 154 Pac. 582).

(b) Under the rule of *strict* construction, when a statute is amended by an Act introduced by the declaration that it shall be "amended so as to read as follows," and closing with the provision that "all Acts and Parts of Acts in conflict herewith are hereby repealed," the legislature evinces "an

intention to make the new Act a substitute for the old one and that so much only of the original Act as is repeated in the new one is continued in force, and all portions omitted from the new Act are repealed." (*Continental Oil Co.* v. *Montana Concrete Co.,* supra; *City of Helena* v. *Rogan,* 27 Mont. 135, 69 Pac. 709; *State ex rel. Jacobson* v. *Board of County Commrs.,* 47 Mont. 531, 134 Pac. 291; *State ex rel. Paige* v. *District Court,* 54 Mont. 332, 169 Pac. 1180.)

(c) The liability imposed by the statute is "penal in character; the plaintiff had no vested right therein; and it was competent for the legislature to repeal it and thereby deprive the plaintiff of a right which it had theretofore enjoyed under it. (*Continental Oil Co.* v. *Montana Concrete Co.,* 63 Mont. 223, 207 Pac. 116)." (*First Nat. Bank* v. *Barto,* supra.)

(d) When a statute "of this character" is repealed (in the manner indicated above) without incorporating therein a saving clause as to the right to enforce liability incurred prior to the repeal, "it must be considered, except as to proceedings past and closed, as if it had never existed." (*First Nat. Bank* v. *Barto,* supra.)

Consequently, when the "new Act," effective March 10, 1919, declared that "every corporation * * * shall by March first of each year hereafter, file * * * a report," rights acquired by virtue of the failure to file such report "within twenty days from and after the thirty-first day of December," 1918, were blotted out as though the law theretofore existing "had never been."

Undoubtedly the decisions announcing the foregoing rules of statutory construction are in harmony with the authorities generally (see 2 Thompson on Corporations, 3d ed., 999), but the legislature of this state has seen fit to impose upon the courts certain rules of construction which they, being without power to legislate, cannot ignore, repeal or nullify by their decisions.

The task before us, then, is to determine the soundness of the rules set out above, by comparison with the statutory provisions on the subjects discussed and in the light of the

fact that the amendment of 1927 did not alter the wording of section 6003, in respect to the time when the report shall be filed—each reads "by March 1st of each year hereafter"— or the imposition of liability for all debts or judgments "which may thereafter be in anywise incurred."

Thus comparing the declarations of this court with mandatory provisions of our Codes, we find, first, that rule (a) above, running through and forming the basis of all of the decisions cited, from *Wethey* v. *Kemper,* supra, down to *First Nat. Bank* v. *Barto,* supra, is founded upon the declaration found in *Gans* v. *Switzer,* supra, decided before our laws were codified, and ignores and violates both the letter and spirit of section 4 of the Revised Codes of 1921, which has been in existence, with but slight modification, since the adoption of the Codes of 1895 (sec. 4, Pol. Code 1895), and which reads as follows: "The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the Codes or other statutes of the state of Montana. The Codes establish the law of this state respecting the subjects to which they relate and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice."

Not even the declaration that the statute is "penal" in its character, in that it imposes a penalty for failure to obey the mandate of the law, justifies a strict construction in this state, for the "Penal Code" also declares: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice." (Sec. 10710, Rev. Codes 1921; sec. 4, Pen. Code 1895.)

In *Continental Oil Co.* v. *Montana Concrete Co.,* supra, the application of the rule of strict construction is declared to be compelled by the fact that we "borrowed" the liability statute from California and that such construction was placed upon it in that state prior to such borrowing, citing *Irvine* v. *McKeon,* 23 Cal. 472, and it is said "the language quoted

above from *Irvine* v. *McKeon* was approved and adopted'' in *Moore* v. *Lent,* 81 Cal. 502, 22 Pac. 875, 876. An examination of the cited cases discloses that the first thereof was decided before California adopted its Code provision requiring a liberal construction of all statutes, and in the second the court prefaced its quotation from the *Irvine Case* with: ''It may be admitted that the true construction of the phrase under consideration [that 'the directors of corporations must not * * * create debts beyond the subscribed capital stock'] is not very clear or satisfactory,'' and thereafter merely said: ''Although the rule of strict construction does not apply under the Code, as we feel bound to construe the statute, to render the defendants individually liable, the corporation must have been indebted in an amount in excess of $10,000,000'' (the subscribed capital stock of the corporation under consideration). The decision does not, therefore, support the rule of strict construction stated in the syllabus found in 81 Cal. 502, which, evidently, misled our court into the position taken; it will be noted that this syllabus does not appear in 22 Pac. 875.

Not only is rule (b) inapplicable because we are commanded to give the statute imposing the directors' liability a liberal, instead of a strict, construction, but the interpretation of the amendment as a ''repeal'' of the former law violates the express mandate of section 93, Revised Codes 1921, also in effect since 1895 (sec. 292, Pol. Code 1895), which declares that, ''where a section or a part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the amended form, but the portions which are not altered are to be considered as having been the law from the time when they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment.'' This is the general rule recognized by the authorities at the time of the adoption of our Codes in 1895, with reference to provisions not penal in character (*State ex rel. Jacobson* v. *Board of County Commrs.,* 47 Mont. 531, 134 Pac. 291), and has been applied in all cases arising under amendments to

such provisions (see *State ex rel. Hay* v. *Hindson,* 40 Mont. 353, 106 Pac. 362; *Edwards* v. *Lewis & Clark County,* 53 Mont. 359, 165 Pac. 297; *State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157; *State* v. *Yale Oil Corp.,* 88 Mont. 506, 295 Pac. 255; *Snidow* v. *Montana Home,* 88 Mont. 337, 292 Pac. 722).

Under the mandate of the Codes requiring a liberal construction of *all* statutes alike, the rule must be applied to the amendment of statutes providing penalties, as well.

Under the plain mandate of section 93, above, therefore, the unaltered provisions of section 6003, that the report shall be filed "by March first of each year hereafter," and that, on failure to file the report, the directors shall be liable for all debts or judgments "which may thereafter be in anywise incurred," must be considered as having been the law since the amendment of 1919 and in spite of the amendment of 1927, and the only part of the statute which was repealed is that imposing liability for debts or judgments "then existing." Under this interpretation, liability incurred at the time of the amendment of the Act was not affected, and it was unnecessary to incorporate a "saving clause" in the amended Act.

Our conclusion in this regard is fortified by the provisions of section 6013, Revised Codes 1921, which declares that the amendment or repeal of any part of the Code regulation of corporations does not "take away or impair any remedy given against any such corporation, its stockholders or officers, for any liability which has been previously incurred."

While the liability discussed is of a penal nature and is not based upon contract (*National Supply Co.-Midwest* v. *Abell,* 87 Mont. 555, 289 Pac. 577), these statutes are not penal within the strict meaning of the word, but are remedial, in that creditors are permitted to resort to the liability as a remedy or means of collecting a debt. (3 Thompson on Corporations, 3d ed., 486; *Huntington* v. *Attrill,* 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123.) Mr. Thompson declares that "a sound view" of this liability is that the legislature grants to the

members of a corporation an immunity from a personal liability for the debts created in their behalf, on condition that they will create a sufficient joint stock or joint fund to stand in the place of their personal liability, and that they will keep the public advised by stated reports of the condition of the fund; and the legislature simply withholds the immunity from the managing members unless this latter condition is complied with. It does not take away any right conferred upon them, either by the common law or statute law, but simply withholds from them a franchise or privilege which is contrary to common right—the privilege of not being personally answerable for their own debts—unless they will comply with a condition subsequent which is easy of compliance. It is simply a case where the grant of a franchise is with a qualification, and where the qualification reads itself into the grant. (Thompson, supra, 486.)

Colorado has a statute (C. L., sec. 6519) similar to our section 6013, but which goes a step further by declaring that the amendment or repeal shall not affect liabilities already incurred "unless the * * * Act shall so expressly provide." This addition does not render the statute different in effect from our own, for, as section 6013 is merely a declaration of the legislature, that body is in nowise restrained from expressly providing in an amendment for the relief from liabilities already incurred, if it sees fit to do so. Here it did not see fit to do so. Recognizing the general rule, rule (d) above, the supreme court of Colorado has declared that their statute abrogates that rule. (*Cavanaugh* v. *Patterson,* 41 Colo. 158, 91 Pac. 1117.)

Section 6013, above, read in connection with section 93, clearly abrogates the rules announced heretofore by this court; these sections were evidently not brought to the attention of the court and were wholly overlooked by both court and counsel in *Continental Oil Co.* v. *Montana Concrete Co., First Nat. Bank* v. *Cosier,* and *First Nat. Bank* v. *Barto,* supra, and, on the authority of the statutes, each of those opinions is expressly overruled.

The amendment of 1927 did not change the wording of the amended Act with reference to the time of filing the annual reports or the necessity therefor, nor as to the liability of directors on such failure, for the debts or judgments of the corporation thereafter incurred, and these provisions must be construed as having been in existence from the time of their first enactment. The complaint herein, therefore, is not vulnerable to the attack made upon it.

The judgment is reversed and the cause remanded to the district court of Flathead county, with direction to overrule the demurrer.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Cause re-argued June 26, 1933, on Motion for Rehearing, by *Mr. Hans Walchli* and *Mr. A. N. Whitlock*, for Respondents, and *Mr. Louis P. Donovan*, for Appellant. Both parties submitted additional briefs.

ON MOTION for REHEARING.

(Opinion filed July 25, 1933.)

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

On motion for rehearing the contention is made by defendants that the opinion of the court in this case, if permitted to stand, should be given application to future transactions only and should not control this case. This contention is grounded on the doctrine of *stare decisis*. They rely upon the rule stated in 15 C. J. 916, as follows: "It is a well-established rule that, where a principle of law has become settled by a series of decisions, it is binding on the courts and should be followed. This rule, which is usually known and referred to as the rule of *stare decisis*, is founded largely upon

considerations of expediency, it being indispensable to the due administration of justice, especially by a court of last resort, that a question once deliberately examined and decided should be considered as settled and closed to future argument." And on page 945, as follows: "Where the statute which has been construed by the courts is subsequently re-enacted, this amounts to a legislative adoption of the construction placed upon the statute, and such construction cannot thereafter be changed."

Briefly summarized, defendants' claim is that under the rule announced in *Continental Oil Co.* v. *Montana Concrete Co.*, 63 Mont. 223, 207 Pac. 116, *First Nat. Bank* v. *Cosier*, 66 Mont. 352, 213 Pac. 442, 443, and *First Nat. Bank* v. *Barto*, 72 Mont. 437, 223 Pac. 963, they were entitled to prevail in this action; that by now overruling those decisions and announcing a different rule, it should be held to apply only to future cases under the principles announced in *Montana Horse Products Co.* v. *Great Northern R. Co.*, 91 Mont. 194, 7 Pac. (2d) 919, affirmed in *Great Northern Ry. Co.* v. *Sunburst Oil & Ref. Co.*, 287 U. S. 358, 53 Sup. Ct. 145, 77 L. Ed. 360.

The contention is resisted by plaintiff on the ground that the prior cases did not consider the effect of sections 93, 6012 and 6013, Revised Codes 1921, and hence that, since these sections are the controlling point here, the former cases cannot be treated as *stare decisis*. Plaintiff's position cannot be sustained. The point decided by the prior cases was that where there was an amendment of the statute fixing the liability and a general repealing clause without any reservation of the right to maintain an action which had previously accrued under the Act which was thus repealed, it must be considered as if the liability never existed. The fact that these sections of the statute, which had a material bearing upon the point considered, were not called to the attention of the court, does not affect the question we are considering. In the case of *Doney* v. *Northern Pac. R. Co.*, 60 Mont. 209, 199 Pac. 432, certain statutes were not given proper consideration, and this gave rise to the different conclusion in the *Montana Horse*

*Products Case.* Under the prior decisions the precise point whether the repealing clause of an amendatory statute without any saving clause extinguished the liability was decided differently from the case here presented. Thus in *First Nat. Bank* v. *Barto,* supra, the liability arose on March 6, 1917. The statute then in force required the report to be filed by January 20 of each year. The defendants contended that for failure to file the report on or before January 20, 1919, the directors were then liable, and that the cause of action was barred by the statute of limitations. But the court held that Chapter 189, Laws of 1919, amending the prior statute and repealing all Acts and parts of Acts in conflict with it, without a saving clause, deprived the creditors of the right to enforce the directors' liability under the prior statute.

That case was on a parallel with this, in principle. There the amending statute did not take effect until March 10, 1919. Until that time Chapter 140, Laws of 1909, controlled, requiring the statement to be filed on or before January 20, 1919. For default there was liability for all debts then existing. Thus, on January 20, 1919, defendants in that action were in default under an existing statute and were liable for the debt sued upon. But the court held that the statute which took effect nearly two months later took away the right to enforce the liability "except as to proceedings past and closed." The court held that after March 10, 1919, plaintiff could not have asserted any rights arising under the prior statutes of 1909.

The *Cosier Case* was also the same in principle as this. There the indebtedness was created on April 20, 1918. The law up to March 10, 1919, required a statement to be filed on or before January 20, 1919. The statement was not filed. In that case the court, after referring to the *Continental Oil Co. Case* with approval, said: "Applying these established rules to the case under consideration it is apparent that the Act of March 10, 1919, deprived plaintiff of any right it might have had to proceed against the defendants to enforce their liability as directors under the previously existing stat-

ute, and that the Lohmiller Mortgage Loan Company was not in default under the 1919 Act when this action was begun on July 29, 1919, since it had until March 1, 1920, in which to file a report, and therefore there was no existing liability on the part of the defendants.'' Thus the court viewed the sufficiency of the complaint from the standpoint of the law as it existed when the action was commenced.

This action was not commenced until long after the effective date of Chapter 5, Laws of 1927. Under the prior decisions of this court defendants could not have been held liable, for the cause of action accrued under prior laws repealed by Chapter 5, Laws of 1927. It is of no importance that for the interim between March 1, 1927, and July 1, 1927, defendants were in default under the law then in force. That was the situation in the prior cases.

Under the prior decisions of this court, on July 1, 1927, the remedy for enforcing a liability incurred under the prior statute was taken away ''except as to proceedings past and closed.'' Here the debt for which defendants are sought to be held was incurred between May 9 and September 17, 1927. Defendants at the time this debt was contracted had the right to rely upon the prior decisions of this court. They were warranted in assuming that if they were not proceeded against and judgment obtained against them prior to July 1, 1927, the remedy against them would be taken away by Chapter 5, Laws of 1927, which was passed in February, 1927, but which was not to become effective until July 1 of that year; and as to such part of the debt as was incurred after July 1, under prior decisions they could not be held liable because they were not then in default under any law.

Plaintiff is not injured by holding that the principles of law announced in the main opinion in this case shall be applicable only from and after its promulgation. It cannot complain that it is not given an advantage not existing under the law at the time the debt was incurred. At the time it extended credit to the Abell Oil Company, it knew, or will be held to have had knowledge, that under the prior decisions of this

court, July 1, 1927, marked the end of its unenforced remedies against the directors.

The rule that a judicial interpretation of a statute becomes a part of the statute itself, so far as contract and property rights are concerned, and that changes in judicial interpretation should not be given retroactive effect, has received judicial sanction by many courts. (*Douglass* v. *Pike County*, 101 U. S. 677, 25 L. Ed. 968; 7 R. C. L. 1010; *Bagby* v. *Martin*, 118 Okl. 244, 247 Pac. 404; *Hoven* v. *McCarthy Bros.*, 163 Minn. 339, 204 N. W. 29; and see 37 Harvard Law Review, at p. 424.) And it has been held to apply as well to questions of procedure affecting property rights (*Norton* v. *Crescent City Ice Mfg. Co.*, (La. App.) 146 So. 753; *State* v. *Haid*, 327 Mo. 567, 38 S. W. (2d) 44; *Kelley* v. *Rhoads*, 7 Wyo. 237, 51 Pac. 593, 75 Am. St. Rep. 904, 39 L. R. A. 594), to a criminal case (*State* v. *Bell*, 136 N. C. 674, 49 S. E. 163), and to a penalty (*People* v. *Tompkins*, 186 N. Y. 413, 79 N. E. 326, 12 L. R. A. (n. s.) 1081). "A change in the judicial view of the law by a subsequent decision could not amount to more than a change in the law by legislation," and, of course, could act prospectively only. (*In re Knowles' Estate*, 295 Pa. 571, 145 Atl. 797, 63 A. L. R. 1086; *Klocke* v. *Klocke*, 276 Mo. 572, 208 S. W. 825; and see 7 R. C. L. 1010, note 20, and cases there cited.)

It is unnecessary that it be shown that reliance was actually placed by defendants upon the former decisions. Reliance thereon will be presumed. (*Bank of Philadelphia* v. *Posey*, 130 Miss. 825, 95 So. 134.)

Under the doctrine announced in *Montana Horse Products Co.* v. *Great Northern R. Co.*, supra, the last paragraph of the opinion by Mr. Justice Matthews should be changed so that the judgment appealed from will stand affirmed. It is so ordered.

The motion for rehearing having served its purpose is denied.

MR. JUSTICE STEWART: I concur in the views of MR. JUSTICE ANGSTMAN.

MR. CHIEF JUSTICE CALLAWAY: I concur. While not entirely satisfied that the doctrine of *stare decisis* is applicable in this

case, the equities point that way, and I resolve the doubt in favor of the judgment of the lower court. In my study of the case upon the motion for a rehearing I am convinced that we were wrong in holding that the suit is upon the account and not upon the judgment. The complaint is sought to be grounded upon the failure of the directors to file the annual report required March 1, 1927, showing the condition of the corporation on December 31, 1926. The defendants did not become directors of the company until May 9, 1927, if then. The indebtedness was contracted between May 9, 1927, and September 17, 1927, but whether before or after the 1st of July, no one can tell from the allegations of the complaint. The complaint shows that the Abell Oil Company purchased goods, wares and merchandise consisting of "oil drilling and well equipment and supplies" of the reasonable value of $6,162.32, of which only $1,227.75 was paid; that plaintiff filed a lien to secure the payment of the indebtedness; that on September 24, 1928, plaintiff commenced an action to foreclose the lien, wherein it asked for reasonable attorneys' fees for the prosecution of the action and costs; and that on January 2, 1929, the plaintiff recovered judgment against the Abell Oil Company for the sum of $4,934.57, with interest thereon at the rate of 8 per cent. per annum from September 17, 1927, together with an attorney's fee of $340 and costs of suit, the same being declared a lien upon certain oil and gas leaseholds belonging to the Abell Oil Company; that the property was ordered sold, and in the order of sale it was directed that if the money arising from the sale should be insufficient to pay the amount due the plaintiff with interest, costs, and attorneys' fees and the expenses of sale, the sheriff should return the fact and the clerk of the court should thereupon enter up a deficiency judgment with interest thereon; the sheriff's return showed a deficiency of $5,711.11, and the clerk entered a deficiency judgment for that amount; "that the said judgment of $5,711.11 has not been paid nor any part thereof, and the same is now due, owing and wholly unpaid"; that by reason of the failure of the defendant directors to pay the amount

due plaintiff, they are "jointly and severally liable to the plaintiff in the sum of $5,711.11, with interest thereon at the rate of 8 per cent. per annum from the 28th day of January, 1929," the date of the deficiency judgment presumably. Judgment is prayed against defendants accordingly.

It seems clear enough that the original account is merged in the judgment.

As is stated in defendants' brief, this judgment is not subject to collateral attack, and while the defendants might have a defense against the action on the account, they cannot assert such defense in an action upon the judgment; they cannot litigate the merits of the judgment. The judgment of January 2, 1929, embraced an attorney's fee of $340. As to that, certainly the defendants do not bear any liability based upon their failure to file an annual report in 1927.

There is no allegation in the complaint showing a failure on the part of the directors to file an annual statement in 1929, covering the year ending December 31, 1928, and if a statement was filed in 1929 there would not be any liability on the part of the directors based upon the deficiency judgment which was entered on January 2, 1929. This action was commenced June 3, 1929. It is clear that if the complaint is based upon the deficiency judgment, this action cannot be maintained. I believe it is, and therefore the judgment appealed from should be affirmed.

ASSOCIATE JUSTICES MATTHEWS and ANDERSON; Being convinced of the correctness of the original opinion, we dissent from any modification thereof.