[No. 27379. *En Banc.* January 29, 1940.]

UNION OIL COMPANY OF CALIFORNIA, *Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.*[1]

*Little & Leader* and *Robert L. Palmer,* for appellant.

*The Attorney General* and *John E. Belcher, Assistant,* for respondents.

[1]Reported in 98 P. (2d) 660.

MILLARD, J.—This action was brought by the Union Oil Company of California to recover against the state of Washington the amount of excise taxes exacted of the plaintiff by the state under the provisions of chapter 58, Laws of 1933, p. 298, Rem. Rev. Stat. (Sup.), § 8327-1 [P. C. § 7068-71] *et seq.*, governing the sale and distribution of gasoline. The appeal is from the judgment of dismissal, rendered upon the plaintiff's refusal to plead further after a demurrer had been sustained to the complaint and supplemental complaint. The allegations of fact admitted by the demurrer to be true are summarized as follows:

Appellant corporation is engaged in the business of refining, manufacturing, producing and compounding motor vehicle fuel. It imports the fuel into this state for the purpose of sale and distribution, and is authorized, pursuant to the provisions of § 2, chapter 58, Laws of 1933, p. 300 (Rem. Rev. Stat. (Sup.), § 8327-2 [P. C. § 7068-72]), by license to engage in business as a distributor of motor vehicle fuel within this state. It makes both wholesale and retail sales, and owns and operates, through salaried employees, as a part of its retail business, many retail service stations throughout the state for the purpose of sale and distribution of its products.

The motor vehicle fuel, when first brought into this state, is stored in the appellant's large bulk storage tanks and thereafter transferred from those tanks, by appellant's trucks, to the smaller storage tanks of the service stations maintained by appellant for direct sale to the public. In the transfer of gasoline from the bulk tanks to the service station tanks, some of the gasoline is lost by evaporation or by spills incident to handling, and some gasoline remains unsold in the service station tanks. Between July 1, 1934, and April 1, 1937, appellant sold 8,732,540 gallons of gasoline from

its retail service stations and paid the statutory tax thereon, at the rate of five cents a gallon, without protest.

The state treasurer and state director of licenses insisted that appellant should pay the tax upon the total number of gallons withdrawn from appellant's bulk storage tanks and delivered to tanks at appellant's retail service stations, rather than on the number of gallons actually sold from the retail service stations. Between the dates mentioned, gasoline in the amount of 151,017 gallons was delivered to appellant's service stations in excess of the amount sold, distributed, or used therefrom; the difference being the result of evaporation, stock handling, or other causes, including the quantity remaining unsold in the service station tanks.

In order to avoid penalties, appellant paid, under protest, to the state treasurer the sum of $7,550.85 as a tax computed at the rate of five cents a gallon on the number of gallons not sold or distributed from the service stations, and paid an additional tax of $2,456.30 demanded by the state for unsold gasoline subsequent to the filing of appellant's original complaint. The prayer is for return by the state of the several sums paid by the appellant under protest.

Appellant does not challenge the validity of chapter 58, Laws of 1933, under which excise taxes are imposed on the sale and distribution of gasoline. It is the position of appellant that the mere transfer of the gasoline from its bulk storage tanks to its service station tanks is not a taxable act under chapter 58, Laws of 1933.

Section 5, chapter 58, Laws of 1933, p. 305, provides:

"Every distributor shall pay, in addition to any other taxes provided by law, an excise tax to the treasurer of this state of five (5) cents for each gallon of motor vehicle fuel sold, distributed or used by it in the State

of Washington. The tax herein imposed shall be collected and paid to the State of Washington but once in respect to any motor vehicle fuel. . . ."

Section 1 of chapter 58, Laws of 1933, p. 298, defines "distributor" as intended to mean and include:

". . . every person, firm, association or corporation who refines, manufactures, produces or compounds motor vehicle fuel and sells, distributes, or in any manner uses the same in this state; also every person, firm, association or corporation who imports any motor vehicle fuel into this state and sells, distributes, or in any manner uses the same in this state whether in the original packages or containers in which it is imported or otherwise; also every person, firm, association or corporation who having acquired in this state in the original package or container, motor vehicle fuel, shall distribute or sell the same, whether in such original package or container in which the same was imported or otherwise, or in any manner use the same."

Under § 1, chapter 58, Laws of 1933, a distributor is one who ". . . sells, distributes, or in any manner uses" motor vehicle fuel. Under § 5 of the same statute, "Every distributor" is required to pay, "in addition to any other taxes provided by law, an excise tax . . . for each gallon of motor vehicle fuel sold, distributed or used by it in the State of Washington."

The question to be answered is whether appellant distributor has "sold, distributed, or used" within this state the motor vehicle fuel on which the state seeks to collect a gallonage or excise tax.

Counsel for the state concede that the tax is not exacted for the sale or use of the gasoline, but contend that it is an excise tax upon the distributor for the privilege of engaging in such business, measured by the number of gallons *distributed* by such distributor.

It is clear that the gasoline was not sold or used by appellant; therefore, unless the gasoline was dis-

tributed by appellant within this state, the tax claimed may not be exacted.

When appellant transferred the gasoline from its bulk storage tanks into the tanks of its own service stations, it did not distribute that gasoline to itself. Surely, it is not necessary to recite sustaining authority for the statement that one can not distribute to himself. The argument that appellant's view of the law would give an advantage to the service stations which it operates as against the independently owned stations, is one that should be addressed to the legislature, the policy-making branch of our government.

There is no language in the statute warranting a construction which writes into the statute a provision for collection of a tax from the distributor upon each gallon of gasoline *withdrawn* by such distributor from that distributor's storage tanks. *State v. Fidelity & Deposit Co. of Maryland,* 194 Wash. 591, 78 P. (2d) 1090, may not be correctly cited as authority to sustain a construction authorizing collection of a tax from the distributor upon each gallon of gasoline withdrawn by such distributor from that distributor's storage tanks. Section 78, chapter 180, Laws of 1935, p. 749, which requires payment of "an excise tax" by each distributor of fuel oil was before us in the case cited; however, the language employed in chapter 180, Laws of 1935, p. 706 (Rem. Rev. Stat. (Sup.), § 8370-1 [P. C. § 7030-61] *et seq.*), is not almost identical with that used in chapter 58, Laws of 1933.

The taxing section of the gasoline tax statute (chapter 58, Laws of 1933) provides that the distributor shall pay "an excise tax . . . for each gallon of motor vehicle fuel sold, distributed or used" by the distributor. As we stated above, there has been no sale or use, nor was there a distribution, as appellant could not distribute to itself.

The fuel oil tax statute (chapter 180, Laws of 1935) provides that each distributor shall pay "an excise tax . . . for each gallon of fuel oil . . . sold, distributed, withdrawn" by the distributor. The only reasonable presumption that may be indulged for the use by the legislature of the terms "distributed" and "withdrawn" in the same statute [fuel oil statute, chapter 180, Laws of 1935], is that the legislature recognized a distinction in their meaning. That is, the legislature knew that "sold" and "distributed" were terms which did not include withdrawal of fuel oil from bulk storage tanks so as to make the act of withdrawal taxable within the meaning of the statute.

In this era of construction and interpretation by legislatures of their prior enactments, it is interesting to note that, in the amendment (chapter 177, Laws of 1939, p. 538) of chapter 58, Laws of 1933, to provide, in computation of the tax on distributors of motor vehicle fuel, for deduction on account of the losses sustained through evaporation and handling, the legislature defined "distribution" to "mean and include all withdrawals." (§ 1, chapter 177, Laws of 1939, p. 538.)

*State v. Yale Oil Corp. of South Dakota*, 88 Mont. 506, 295 Pac. 255, cited by counsel for the state, is not apposite, as the Montana statute there challenged provided that

" . . . all gasoline delivered by any distributor to any of his service stations in this state shall be deemed to have been sold and shall be treated and considered in computing such license tax. . . ."

From the foregoing, it is obvious that the Montana legislature was mindful of the fact that the term "distribute" did not include transfer by a distributor of gasoline from storage tanks to that distributor's service stations. Our legislature was not less cognizant of the meaning of the term "distributed" when enacting the

motor vehicle tax (chapter 58, Laws of 1933), the fuel oil tax statute (chapter 180, Laws of 1935), and the motor vehicle tax statute (chapter 177, Laws of 1939) amendatory of chapter 58, Laws of 1933. The members of the legislature have access to the authorities—legal and lexicographic—and are presumed to know the meaning of the words they write into their enactments. We can not hold that the members of our legislature were ignorant of the meaning of a word of such common use as "distributed."

The judgment is reversed, and the cause remanded with direction to the trial court to overrule the demurrer.

STEINERT, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

GERAGHTY, J. (dissenting)—The appellant contends, first, that the tax required to be paid under chapter 58, Laws of 1933, p. 298, is an excise upon the use of gasoline; and, secondly, that the mere transfer of the gasoline from its bulk storage plant to its service station tanks is not a taxable act. The tax is payable under § 5, p. 305, of the act, which provides:

"Every distributor shall pay, in addition to any other taxes provided by law, an excise tax to the treasurer of this state of five (5) cents for each gallon of motor vehicle fuel sold, distributed or used by it in the State of Washington. The tax herein imposed shall be collected and paid to the State of Washington but once in respect to any motor vehicle fuel. . . ."

Section 1 of the act, p. 298, defines "Distributor" as intended to mean and include:

". . . every person, firm, association or corporation who refines, manufactures, produces or compounds motor vehicle fuel and sells, distributes, or in any manner uses the same in this state; also every person, firm, association or corporation who imports any

motor vehicle fuel into this state and sells, distributes, or in any manner uses the same in this state whether in the original packages or containers in which it is imported or otherwise; also every person, firm, association or corporation who having acquired in this state in the original package or container, motor vehicle fuel, shall distribute or sell the same, whether in such original package or container in which the same was imported or otherwise, or in any manner use the same."

I am unable to agree with the appellant's contention that the tax paid by the distributor is a tax on the use of gasoline. The tax is, rather, an excise paid by the distributor, measured by the amount of gasoline distributed.

Section 78 of chapter 180, Laws of 1935, p. 749, requires payment of an excise tax by every distributor of fuel oil, the language employed being almost identical with that used in the act here involved. Construing § 78, the court, in *State v. Fidelity & Deposit Co. of Maryland,* 194 Wash. 591, 78 P. (2d) 1090, said:

"Although Title XI, which includes §§ 78 to 81, inclusive, of chapter 180 of the 1935 Laws of Washington, is captioned 'Fuel Oil Tax,' it is clear from the terms of § 78, p. 749, that the tax therein provided for is not a tax on fuel oil, but an excise tax imposed upon persons with respect to the privilege of distributing fuel oil, such tax being measured by the amount of the fuel oil distributed."

While the tax is an excise payable by the distributor for the privilege of engaging in business, the question remains to be answered whether the taxable act, "the distribution," takes place at the time of the withdrawal from the bulk storage plant for delivery to the retail service stations, or at the time of delivery into the fuel tanks of motor vehicles by the service stations.

A survey of the act as a whole leads to the conclusion that the statutory set-up involves, of necessity,

payment of the tax by the distributor when gasoline is withdrawn from the licensed storage plant.

Section 3 of the act, p. 303, provides that each distributor shall be assigned a license number upon qualifying for a license, and the license is to be displayed conspicuously by the distributor at his principal place of business in the state. It is provided that

"The director shall also issue separate license cards *for each bulk storage plant operated by such distributor.* Such license cards shall indicate the number so assigned the distributor, the location of the *storage plant for which the card is used,* and such other information as the director may prescribe. Such license card shall be conspicuously displayed *at each bulk storage plant to which it is assigned,* and it shall be *unlawful for any distributor to operate or maintain a bulk storage plant* in this state for the purpose of storing motor fuel without displaying such license card as herein provided." (Italics mine.) Rem. Rev. Stat. (Sup.), § 8327-3 [P. C. § 7068-73].

It is thus seen that all of the gasoline brought into the state for distribution is required to be stored in licensed bulk storage plants. Other provisions are found in the act for inventories of gasoline in storage and for reports to be made of the distribution and sale from the bulk storage plants. By checking the amount of gasoline withdrawn from these storage plants against the volume put into them, the state is enabled to determine the amount of tax due.

While the act defines a service station as "a place operated for the purpose of delivering motor vehicle fuel into the fuel tanks of motor vehicles," the act does not subject such stations to regulation other than the requirement that they keep their records open to inspection by the director of licenses as a check against the records of the distributor. The contention of the appellant that gasoline delivered to its service stations

is to be treated as in storage and undistributed, within the terms of the act, is untenable, because the retail station tanks are not licensed to hold motor fuel as bulk storage plants.

The appellant concedes in its brief that, in making deliveries to independently owned stations, the tax is payable when the gasoline is withdrawn from bulk storage for delivery, because there is then a sale and delivery in the sense of giving possession to the retailer. The appellant's view of the law would give an advantage to the service stations which it operates as against the independently owned stations. The law does not inhibit the appellant from operating service stations as a separate and collateral business activity; but it cannot, by so doing, relieve itself from the full burden imposed upon it as a distributor. In operating retail service stations, it does so on terms of equality with independent stations, which pay the distributor for the gasoline received by them without credit for any loss subsequently sustained by evaporation, handling, or otherwise.

Being of the opinion that the judgment of the trial court was correct, I am constrained to dissent.

BLAKE, C. J., MAIN, and BEALS, JJ., concur with GERAGHTY, J.