SNIDOW, Respondent, *v.* THE MONTANA HOME FOR THE AGED et al., Appellants.

(No. 6,671.)

(Submitted October 4, 1930. Decided November 3, 1930.)

[292 Pac. 722.]

*Mr. M. J. Lamb,* for Appellants, submitted a brief.

*Mr. Albert Anderson* and *Mr. H. C. Crippen,* for Respondent, submitted a brief; *Mr. Crippen* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action was brought by plaintiff as a taxpayer of Yellowstone county to have declared null and void an attempted sale of real estate in the city of Billings, of which the county had become the owner by virtue of a tax deed, and which the county commissioners had offered for sale at public auction.

The record shows that on October 13, 1928, the board of county commissioners ordered a sale of the property at public

auction on November 20, 1928, at 10:30 A. M. at the front door of the courthouse in Billings, fixing the fair market value of the property at $15,000. The board ordered the clerk "to post the required notices and to publish said notice in the 'Yellowstone' in the issue of October 18th, making one insertion as required by law." The notice given by the clerk recited: "By order of the Board of County Commissioners of Yellowstone county, Montana, the board will on November 20, 1928, at 10:30 o'clock A. M. of said day, at the front door of the courthouse in the city of Billings, Montana, offer for sale at public auction to the highest bidder, all the right, title, interest, estate, lien, claim and demand of the state of Montana and of said county of Yellowstone in and to the following described real estate, viz.: [describing it] * * * ; and the board fixed the fair market value of said property at $15,000."

The notice was posted on a billboard in the lobby of the courthouse, on a billboard on the outside of the courthouse, and at three other public places in the city of Billings, and was published in the "Yellowstone," a weekly paper, published at Worden in Yellowstone county, in one issue, that of October 18, 1928. On November 20, at the time and place fixed in the notice, the property was offered for sale by one of the commissioners, who acted as auctioneer. One bid only was received, that of T. S. Stockdal, as trustee, for $15,500, and the property was struck off to him at the sum bid.

On January 19, 1929, a contract of sale was entered into between Yellowstone county as vendor and the Montana Home for the Aged, a corporation, as purchaser. By the terms of the contract the purchaser agreed to pay to the vendor $15,500 as follows: Three thousand one hundred dollars, on the execution of the contract and a like sum on the twentieth day of November of the years 1929, 1930, 1931, 1932, together with interest at the rate of six per cent per annum from the date of the contract on all deferred payments, the interest to be paid annually on the twentieth day of November of each year during the life of the contract.

Shortly thereafter plaintiff began this action. Among other allegations, plaintiff alleged that the notice of sale was insufficient, that the publication thereof was insufficient, that the value of the property offered for sale was over $40,000, and consequently the value fixed by the commissioners was far below its market value. A general demurrer interposed by the Montana Home for the Aged, and Stockdal, trustee, having been overruled, they filed an answer to the complaint. An answer was also filed by Yellowstone county and the board of county commissioners. Thereafter the cause came on for trial and evidence was produced by the respective parties. In due time the court made findings of fact and conclusions of law, and entered a decree in favor of plaintiff. The court adjudged the sale of the premises attempted to be made on November 20, 1928, for the sum of $15,500 to be null and void, and the defendants Stockdal, trustee, and Montana Home for the Aged were permanently enjoined from taking possession of the premises, or attempting to do so. The court ordered Yellowstone county to refund to the defendant Montana Home for the Aged the sum of $3,100 paid as part of the purchase price. From this judgment the defendants Montana Home for the Aged and T. S. Stockdal, trustee, have appealed.

Section 2235, Revised Codes 1921, as amended by Chapter 85 of the 1927 Session Laws (p. 246, sec. 3), called hereafter the 1927 amendment, reads in part as follows: "Whenever the county has become, or attempted to become, the purchaser of any property, real or personal, sold for delinquent taxes, and said property has not been redeemed by the person entitled to do so, and a tax deed or instrument purporting to convey title has been issued to the county, whether the same was regular or irregular, valid or invalid, the board of county commissioners may, at any time, by an order entered upon the minutes of its proceedings, sell such property at public auction at the front door of the court house; provided, however, that thirty (30) days notice of such sale shall be given by the board of county commissioners by publication in a newspaper printed in the county and by posting copies of

such notice in at least five public places in the county; and provided further, that no sale of any property shall be made for a price less than the fair market value thereof, as determined and fixed by the board of county commissioners at the time of making the order for sale, and which value shall be stated in the notice of sale. Such sale may be made for cash, or, in the case of real property, on such terms as the board of county commissioners may approve; provided, however, that if such sale is made on terms at least twenty per cent. (20%) of the purchase price shall be paid in cash at the date of sale, and the remainder may be paid in installments extending over a period of not to exceed five years, and all such deferred payments shall bear interest at the rate of 6% per annum.''

1. After providing that no sale of the property shall be made for a price less than the fair market value thereof as determined and fixed by the board at the time of making the order for sale, which value shall be stated in the notice of sale, the statute provides that the sale may be made for cash or on terms. Hence counsel for respondent argue that it is the plain intention of the statute that the notice should specify whether the sale shall be made for cash or upon terms, and, as the notice of sale failed to so specify, it was defective in substance. We think there is merit in this contention, but, as the case must be determined against appellants upon another ground, we shall not stop to consider whether the notice of sale was fatally defective. It is conceivable that in another case surrounding circumstances and conditions might avoid so serious a result. However, it is not inappropriate to suggest that the facts in this case furnish a concrete example why the notice should state the terms of sale. Bidders might be attracted if they knew the property could be bought on terms who would not attend if they understood the entire purchase price had to be paid in cash. The implication reasonably to be drawn from the notice in this case was that the sale would be made for cash, and we find but one bidder present, who bid the sum of $15,500; a memorandum made by the clerk of the sale indicates that the property was sold

for that sum of money in cash; and yet we find the board some two months later entering into a contract with the bidder's principal for a sale upon terms.

2. There can be no doubt that the notice of the sale required by the statute was not given.

(a) The board thought that the provision "that thirty (30) days notice of such sale shall be given by the board of county commissioners by publication in a newspaper printed in the county" would be satisfied with one publication made thirty days prior to the day of sale. This construction of the statute was palpably erroneous.

Section 9833, Revised Codes of 1921, provides that, where not otherwise prescribed by law, notices of all kinds, "whether given by any court, judge, or clerk thereof, or by any other officer, board, or commission, which by the laws of this state are required to be published in any newspaper, shall be published once a week during the time prescribed by law for publication thereof, whether such publication be made in a weekly, semiweekly, triweekly, or daily newspaper." Plainly, the statute requires the publication of the notice once a week during the thirty-day period. This is consistent with the practice generally. (See Bancroft's Code Pleading, p. 7730; *Scott* v. *Paulen*, 15 Kan. 162; *State* v. *Hanson*, 80 Neb. 724, 115 N. W. 294.)

(b) The court determined that there had been but four copies of the notice posted, holding that the two notices posted at the courthouse amounted to but one. It appears from the evidence that the billboard in the lobby of the courthouse is in the corridor on the right as one goes in the front door at the west entrance, and the billboard on the outside is fastened to the courthouse wall on the south side of the building overlooking a walk that goes around the courthouse to the east. The court was justified in holding that these postings at the courthouse amounted to a posting in one public place only. (*McDaniel* v. *Wetzel*, 264 Ill. 212, 106 N. E. 209, L. R. A. 1916E, 1140, and cases cited in L. R. A. note; *Tennessee Drainage District* v. *Moye*, 258 Ill. 296, 101 N. E. 580;

*National Loan & Inv. Co.* v. *Dorenblaser,* 30 Tex. Civ. App. 148, 69 S. W. 1019.)

3. As the notice of sale was neither published nor posted as required by law, it follows that the board did not have the power, that is, the jurisdiction, to make the sale, and that the attempted sale is void. But counsel for the appellants argues that the defect was cured by the provisions of Chapter 162 of the Session Laws of 1929 (page 322), which amended Chapter 85, section 3, of the Session Laws of 1927, supra.

The 1927 amendment contains this provision: "All sales heretofore made, or attempted to be made, by counties of property purchased for taxes, and the deeds to purchasers from such counties, whether or not irregular or void, for any reason, or because of any irregularity or failure to follow the directions or comply with the provisions of any statute relating to such deeds, or relating to the taxation or sale of such property for taxes, or the time or manner of redeeming property or of securing a tax deed, are hereby confirmed, and said deeds and any deed or contract executed under this section shall vest in the purchaser, as of the date of said deed or contract, all the right, title, interest, estate, lien, claim and demand of the State of Montana, and of the county in and to said real estate, including the right to recover unpaid taxes, interest and penalties if the tax sale or any of the tax * * * shall be attached and held irregular or void." This language is repeated without change in the 1929 amendment, with the addition of the following: "If the property real or personal of which the county has become possessed, be of a value of less than One Hundred Dollars, ($100.00), it will be sold in accordance with the provisions of Subdivision 10 of Section 4465 of the Revised Codes of Montana, 1921, and amendments thereto."

In *State ex rel. Malott* v. *Board of County Commrs. of Cascade County,* decided January 23, 1931 (see 89 Mont. ——), we took occasion to show that the only changes made in the 1927 amendment by the 1929 amendment are the omission of

the provision in the 1927 amendment requiring the board of county commissioners to fix the fair market value of the property to be sold, "which value shall be stated in the notice of sale," and the further provision respecting the sale of property valued at less than $100. In other words, the only purpose of the legislature in enacting the 1929 amendment was (1) to permit the board to sell property obtained by the county by tax deed at any price obtainable therefor at public auction after notice given, and (2) to apply the provisions of subdivision 10 of section 4465 to the sale of property valued at less than $100.

The provision of the 1927 amendment last above quoted is what is termed a curative Act. "The control of *remedies,* exercised by the enactment of laws to cure defects in previous statutes, or to supply former omissions and legalize past acts, is one of the most essential of legislative powers." (Wade on Retroactive Laws, sec. 250.) Such an Act operates only on conditions already existing, and, in a sense, can have no prospective operation. (25 R. C. L. 823; 23 Cal. Jur. 611.) As to the limitations of a curative Act see *Lamont* v. *Vinger,* 61 Mont. 530, 202 Pac. 769. It goes without saying that the curative provision of the 1927 amendment was designed to cure defects in past transactions. The wording is, "All sales heretofore made, or attempted to be made." It is made retrospective, or retroactive, synonymous terms, by its express language and intent, and is in harmony with section 3, Revised Codes 1921. (*State ex rel. Rankin* v. *District Court,* 70 Mont. 322, 225 Pac. 804.)

Now, by re-enacting the curative provision of the 1927 amendment, did the legislature give it any additional force? The answer, in view of our statutes and the law, must be an emphatic negative.

Section 93 of the Revised Codes of 1921 declares: "Where a section or a part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the amended form, but the portions which are not altered are to be considered as having been the law from the time when they were

enacted, and the new provisions are to be considerd as having been enacted at the time of the amendment.'' This section was recommended by the Code Commissioners of New York in 1859, being adapted from the language of Chief Justice Denio in *Ely* v. *Holton,* 15 N. Y. 595, in which that learned jurist said: ''The form in which amendments, both of the Code and of the Revised Statutes, have generally been made, by declaring that particular sections shall be amended so as to read in a given way, was adopted for the purpose of adjusting them to the original enactments, so that when the system should, after repeated amendments, become complete, the different parts might be put together without further revision, and thus form a perfect Code. The portions of the amended sections which are merely copied without change, are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts, or the changed portions, are not to be taken to have been the law at any time prior to the passage of the amended Act. * * * The theory of amendments, made in the form adopted in the present instance, we take to be this: The portions of the section which are repeated are to be considered as having been the law from the time they were first enacted, and the new provisions are to be understood as enacted at the time the amended Act took effect.'' (See *State ex rel. Jacobson* v. *Board of County Commrs.,* 47 Mont. 531, 134 Pac. 291.) California adopted the section in 1872, and we borrowed it from California in 1895.

In applying section 93, we find the intention of the legislature in 1929 was simply to continue in effect the curative provisions of the 1927 amendment; the 1929 amendments did not affect the intent and meaning of the curative portion of the 1927 amendment in any degree. But, in order to effect the change in section 2235, as amended in 1927, it was necessary, in accordance with section 25 of Article V of the Constitution, to re-enact and publish at length the entire section, which was done. (*State ex rel. Hay* v. *Hindson,* 40 Mont. 353, 106 Pac. 362.)

It is a familiar rule of statutory construction that the re-enactment of a statute does not affect its meaning or enlarge its scope, in the absence of clearly ascertainable legislative intent to the contrary. (*In re Opinion of the Justices*, 237 Mass. 591, 130 N. E. 685.) "It is a settled rule of construction that when existing statutes are re-enacted the effect is merely to continue them in force in their original sense. (*Allgood* v. *Sloss-Sheffield Steel & Iron Co.*, 196 Ala. 500, 71 South. 724.)" (*Board of Revenue* v. *Johnson*, 200 Ala. 533, 76 South. 859, 860.)

The re-enactment of the curative portion of the 1927 Act did not change its meaning nor extend its operation in any degree. It did not cure nor in anywise affect any act done after the date of its enactment and approval, which was March 8, 1927. (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 403.)

The judgment is affirmed.

ASSOCIATE JUSTICES FORD and ANGSTMAN concur.

JUSTICES MATTHEWS and GALEN, being absent, did not hear the argument and take no part in the foregoing decision.