STATE, Respondent, v. ERLANDSON, Appellant.

No. 9214.

Submitted October 21, 1952. Decided October 30, 1952.

249 Pac. (2d) 794.

Mr. Jess L. Angstman, Havre, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. John L. McKeon, Asst. Atty. Gen., Mr. William F. Crowley, Asst. Atty. Gen., Mr. Edward J. Ober, Jr., Co. Atty., Havre, for respondent.

Mr. Angstman and Mr. McKeon argued orally.

MR. CHIEF JUSTICE ADAIR:

The defendant Eva Erlandson owns the Fresno Tavern in Hill county, Montana, located about fifteen miles west of Havre and without the corporate limit of any city or town, which tavern the defendant operated pursuant to the authority conferred upon her by retail beer license No. 1550 and retail liquor license No. 1490, issued to her by the Montana state liquor control board.

At about 1:30 o'clock a. m. on Sunday, February 10, 1952, the probation officer of Hill county, accompanied by a deputy sheriff of said county found three 16 year old girls and two 18 year old boys, all students of the Havre high school, congregated at the bar in the Fresno Tavern, where they were engaged in drinking either beer or gin that had been sold and served to them by one Gladys Maalis, a bar maid, who was then, behind the bar in the tavern, selling and serving drinks.

It is the law of Montana that: "Any person whomsoever whether a licensee or not, who shall without the corporate limit of any city or town, *permit minors to congregate and sell or give away to said minors beer or other liquors* shall be deemed guilty of maintaining a nuisance" and "be guilty of a misdemeanor and upon conviction thereof shall be fined not less than one hundred dollars ($100.00), nor more than five hundred dollars ($500.00) and be imprisoned not less than thirty (30) days nor more than six (6) months." R. C. M. 1947, sec. 4-345. Emphasis supplied.

The aforesaid bar maid sold and served to one of the boys, a mixed gin drink commonly known as a "Sloe Gin Collins" of which drink the lad permitted two of the 16 year old girls to sip.

To the other 18 year boy the bar maid sold and served five bottles of beer, being one apiece for the three girls and two bottles for himself.

It is the law of this state that, "It shall be unlawful for any

* * * retailer, his or her employee or employees *to sell, deliver or give away, or cause or permit to be sold, delivered or given away, any beer to:* 1. Any person under the age of twenty-one (21) years;'' and that upon conviction of violating the provisions of such statute the offending retailer shall ''be subject to the penalties provided for in Section 4-305 of the Montana beer act, and in addition thereto the license of any such * * * retailer shall, in the discretion of the board be immediately revoked, or said license may be suspended for a period of not more than three (3) months.'' Section 7 of Chapter 166, Montana Session Laws of 1951.

Upon entering the Fresno Tavern the officers confiscated the beer that was on the bar in front of the minors there congregated and sent them out of the establishment and on the way to their respective homes.

*The Information.* By information filed in the district court of Hill county, Montana, on February 19, 1952, it was charged that on or about the 10th day of February 1952, in said county and state, the defendant Eva Erlandson, did ''unlawfully at the Fresno Tavern, by and through Gladys Maalis, the bar maid therein, *sell and deliver and cause and permit to be sold and delivered* to one, Thomas Lumpkin, a person under the age of twenty-one (21) years, a bottle of beer, the said Eva Erlandson being then and there the owner of said tavern and duly licensed by the State of Montana to sell beer and liquor at retail, contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State of Montana.''

*The Judgment.* Upon her plea of not guilty the defendant was tried by a jury, convicted of the misdemeanor charged and sentenced to pay a fine of $250. From the judgment entered against her in conformity to the jury's verdict the defendant has appealed.

Defendant's only specification of error is that there is no substantial evidence to support the judgment of conviction.

At the trial seven witnesses testified for the state, they being

the five juveniles who had congregated in the tavern and the two peace officers who found them there. The defendant alone testified for the defense.

*The Evidence.* At the trial the probation officer testified: "I got out of the car and went over to the tavern and looked in the window * * * and I saw a group of high school students in there. I noticed that they were drinking * * * before we got inside I noticed * * * that one of the boys gave the drink to the girls, and I noticed that at least two of them took a sip of the drink just to taste it, I imagine, but when we got inside there was a bottle of beer sitting in front of the Lumpkin boy."

The deputy sheriff, who accompanied the probation officers, testified: "I just glanced in the window and I saw some youngsters in there and then we walked in. There were three girls and two boys at the bar. One of the boys had a bottle of beer before him, and there was a small glass with some beer in it in front of the other boy."

One eighteen year old testified: That he was a junior in high school; that at about 7:30 o'clock on the evening of February 9, 1952, he and Thomas Lumpkin were at the Fresno bar, where he first saw the bar maid Gladys; that on this occasion the witness had a drink for which he paid and that Thomas Lumpkin also had a drink or drinks for which Lumpkin paid; that thereafter the witness and Lumpkin proceeded to Havre where, shortly after midnight, they picked up the three 16 year old girls who accompanied them in an automobile to the Fresno Tavern where Gladys, who was still behind the bar, sold and served the witness a "Sloe Gin Collins;" and that such bar maid also served beer to Lumpkin and to each of the three teen-age girls and that Lumpkin paid for the beer so sold and delivered.

At the trial Thomas Lumpkin testified: That he was 18 years of age and a member of the senior class of the Havre high school; that he had been in the Fresno Tavern at different times during the period covering about a month or so prior to February 10, 1952, on which occasions he had seen the bar maid

Gladys in the tavern; that upon entering the tavern on the morning of February 10th, the witness first ordered and was served a bottle of beer by Gladys who was then behind the bar; that thereafter he purchased a second bottle of beer for himself and that while he was drinking beer from a glass with his second bottle on the bar in front of him, the two officers entered the tavern and seized the beer in the bottle as well as that remaining in the glass from which the witness had been drinking.

Defendant's direct examination at her trial by her own counsel began as follows:

"Q. State your name please? A. Eva Erlandson.

"Q. Where do you reside? A. At the Fresno Tavern and on the farm.

"Q. Where is your farm with respect to the Fresno Tavern? A. It's thirteen miles southwest of Fresno.

"Q. Do you own the Fresno Tavern? A. Yes.

"Q. And you also own your farm? A. Yes."

Thus by her own testimony was defendant shown to have been an occupant of the Fresno Tavern wherein the offense charged was committed and wherein Gladys Maalis, the bar maid was, by defendant, suffered to be and remain.

It is the law of Montana that "Upon proof of the fact that an offense against this act has been committed by any person in the employ of *the occupant* of any house, shop, room, or other premises in which the offense is committed, *or by any person who is suffered by the occupant, to be or remain in or upon such* house, shop, room, or *premises or to act in any way for the occupant, the occupant shall prima facie be deemed to be a party to the offense so committed, and shall be liable to the penalties prescribed for the offense as a principal offender, notwithstanding the fact that the offense was committed by a person who is not proved to have committed it under or by the direction of the occupant;* but nothing in this section shall relieve the person actually committing the offense from liability therefor." R. C. M. 1947, sec. 4-207. Emphasis supplied. 48 C. J. S., Intoxicating liquors, sec. 271, p. 388, note 35.

The State Liquor Control Act and the Montana Beer Act ▉ are companion measures originally enacted as Chapters 105 and 106 of the Montana Session Laws of 1933. The acts are *in pari materia,*—they must be construed together and, with the amendments thereto, they comprise but one homogeneous consistent body of law. Fletcher v. Paige, 124 Mont. 114, 116, 117, 220 Pac. (2d) 484, 19 A. L. R. 2d 1108. The acts are police regulations enacted pursuant to the police power of the state. Stephens v. City of Great Falls, 119 Mont. 368, 372, 175 Pac. (2d) 408. The acts and deeds therein condemned and prohibited are *mala prohibita* as distinguished from acts *mala in se.* As to acts *mala in se* the intent governs but as to those *mala prohibita* the only inquiry is: Has the law been violated? State v. Smith, 57 Mont. 563, 577, 578, 190 Pac. 107.

The defendant's principal defense was an alibi, she having testified that, at the time charged in the information, she was absent from the tavern and then at her ranch home thirteen miles distant.

While defendant testified that she gave her manager Pat Griffon "certain instructions about selling liquor to minors or violating the law" yet she wholly failed to inform the court or jury what those instructions were or the nature or purport thereof.

Defendant also testified that after the occurrences of February 9th and 10th, she discharged her manager Griffon as she "thought he was more competent than that" and that she closed her tavern and "left it closed because I didn't have any help."

It is the law that "No licensee * * * shall employ *or permit* any person, either as a waiter or waitress, to serve beer to patrons, unless possessed of good moral character." R. C. M. 1947, sec. 4-339. Emphasis supplied.

Defendant also contends that Gladys Maalis, the bar maid, ▉ was working for defendant's manager Pat Griffon; that said bar maid was not on defendant's payroll and that defendant may not be held criminally liable for the violations

of the law committed on the licensed premises by such bar maid. The provisions of R. C. M. 1947, sec. 4-207, supra, are against such contention.

Defendant's own testimony shows: That for some time prior to February 10th, defendant had known that Gladys Maalis was working at defendant's tavern; that defendant had seen Gladys serving drinks at the tavern bar; that defendant knew Gladys worked there where she substituted for defendant's manager, Pat Griffon; that defendant knew that when Griffon went to town Gladys stayed at the tavern and that when Griffon went for his meals Gladys took over and substituted for him; that Gladys did not stay there steady but that she would come and go and that "she might have been there for about three hours at a time working there."

Defendant testified that she did not remember Gladys being at the tavern much more than two weeks prior to February 10th, but the state's witness Lumpkin testified that he had observed Gladys working in the tavern for about a month or so prior to February 10th.

Neither Pat Griffon nor Gladys Maalis testified at defendant's trial and the record fails to show the issuance of any subpoena for either, or any effort made to produce either as a witness. Also there is no evidence that defendant at any time made any objection or protest to allowing Gladys Maalis to tend bar and substitute for Griffon in the operation of the tavern.

The defendant as owner and licensed operator of the tavern reaped all the benefits of the sales made by Gladys Maalis and by defendant's silence did she permit and give her assent, approval and ratification to the sales of beer and liquor made by Gladys while working as a bar maid in defendant's tavern. By her silence and by accepting and retaining the benefit of the sales made by Gladys whom she knew was acting as a substitute bartender for her manager did the defendant ratify said acts. R. C. M. 1947, sec. 2-117. There is ample substantial

evidence tending to show, at the very least, an ostensible agency. R. C. M. 1947, sec. 2-106, 2-116 and 2-124.

That the bar maid was not on defendant's payroll is wholly ▮ immaterial for agency is founded on consent,—not consideration. R. C. M. 1947, sec. 2-115; Laurence v. Pacific Oil & Lead Works, 27 Cal. App. 69, 148 Pac. 964.

"The agent had no license to sell to anyone, and it is only ▮ lawful for him to do so in the name and by the authority of his principal and the presumption must be deemed conclusive the agent or servant acted within the scope of his authority in making the sale." McCutcheon v. People, 69 Ill. 601.

"The court must find according to a presumption, in the ▮ absence of evidence legally sufficient to overcome it." In re Roberts' Estate, 49 Cal. App. (2d) 71, 120 Pac. (2d) 933, 939.

As a general rule, one person is not liable for the criminal ▮ acts of another in which he did not participate either directly or indirectly but there is a class of cases which form an exception to such general rule being cases relating to criminal responsibility for the maintenance of a public nuisance and for the violation of revenue and police regulations committed by one's agent or servant. "As to these, it is asserted, the principal may be convicted in the absence of proof that he authorized the commission of the crime, and even in the face of proof that he forbade it. Among the most common cases wherein this exception is noted are those involving a violation of an intoxicating liquor statute. In those cases the almost universal rule is that the owner of a saloon is criminally liable for all violations of the law committed by his agents, although without his knowledge, or even against his express prohibition." 8 R. C. L., Criminal Law, sec. 17, p. 66, notes 17 and 18. See: Rose v. Liquor Control Commission, 124 Conn. 689, 199 A. 925; State v. Grams, 241 Wis. 493, 6 N. W. (2d) 191, 192; State v. Shull, 66 S. D. 102, 279 N. W. 241, 115 A. L. R. 1226; Mogler v. State, 47 Ark. 109, 111, 14 S. W. 473; State v. Kittelle, 110 N. C. 560, 15 S. E. 103, 104, 106, 15 L. R. A., 694,

28 Am. St. Rep. 698; State v. Winner, 153 N. C. 602, 69 S. E. 9; State v. Brown, 73 Or. 325, 144 Pac. 444; Hershorn v. People, 108 Colo. 43, 113 Pac. (2d) 680, 139 A. L. R. 297; People v. Wilson, 106 Colo. 437, 106 Pac. (2d) 352; State v. Lougiotis, 130 Conn. 372, 34 A. (2d) 777; Meigs v. State, 94 Fla. 809, 114 So. 448; State v. Raper, 174 Or. 252, 149 Pac. (2d) 165; Perry v. Oregon Liquor Control Commission, 180 Or. 495, 177 Pac. (2d) 406; State v. Murphy, S. D., 48 N. W. (2d) 225; O'Donnell v. Commonwealth, 108 Va. 882, 62 S. E. 373; State v. Kominis, 73 Ohio App. 204, 55 N. E. (2d) 344; State v. Constatine, 43 Wash. 102, 86 Pac. 384, 117 Am. St. Rep. 1043; State v. Denoon, 31 W. Va. 122, 5 S. E. 315; State v. Graves, 257 Wis. 31, 42 N. W. (2d) 153; State ex rel. Conlin v. Mayor of City of Wausau, 137 Wis. 311, 118 N. W. 810; 48 C. J. S., Intoxicating Liquors, secs. 259, 261, 269 and 271, pp. 381-388.

There was ample substantial evidence introduced at defend-
 ant's trial to support the jury's verdict and the judg-
ment entered in conformity therewith. We find no prejudicial error and the judgment is affirmed.

ASSOCIATE JUSTICES BOTTOMLY and ANGSTMAN concur.

MR. JUSTICE METCALF, not participating.

MR. JUSTICE FREEBOURN (specially concurring).

I concur in the result reached because I believe there were enough circumstances shown from which the jury were justified in concluding that such sale of liquor was made with the knowledge and acquiescence of the defendant.

I believe, however, that the law laid down in 48 C. J. S., Intoxicating Liquors, sec. 271, p. 387 (liability of principal or master for acts of agents and servants), is sound and should be followed. That law is ''the principal or master is not criminally liable for illegal sales made or acts done by his clerk, servant, or agent, without his knowledge or consent, express or implied or in his absence and in disobedience to his commands

326

or instructions provided such commands or instructions were given honestly and in good faith, and with the intention and expectation that they would be obeyed."