29 N.J. Super. 434 (1954)
102 A.2d 788
FLORENCE HOLMES AND ELWOOD HOLMES, TRADING AS RIVERVIEW INN, APPELLANTS,
v.
DOMINIC A. CAVICCHIA, DIRECTOR OF THE DIVISION OF ALCOHOLIC BEVERAGE CONTROL OF THE DEPARTMENT OF LAW AND PUBLIC SAFETY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1954.
Decided February 4, 1954.
*435 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. James M. Davis, Jr., argued the cause for the appellants.
Mr. Samuel B. Helfand, Deputy Attorney-General, argued the cause for the respondent (Mr. Theodore D. Parsons, Attorney-General, attorney).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
In this appeal the appellants contend that the proofs failed to establish that the beverage sold to certain minors had sufficient alcoholic content as to bring the sales within the proscribed regulation.
There were admittedly six minors who visited the premises owned and operated by the appellants. Each of the minors testified that on the occasion in question he ordered from, was served by and paid Elwood Holmes, one of the licensees, for the "beer" they consumed. The number of glasses of "beer" ordered, served, paid for and drunk ranged from three to ten, and each minor testified that he had been served "beer" at the appellants' tavern on prior occasions.
In defense of the charge, Elwood Holmes testified that he recognized the young men; that he knew they were minors; that he had not served them beer, but on the contrary, had served them "7-Up," a non-alcoholic beverage.
The Regulation No. 20 alleged to have been violated provides:
"Rule 1. No licensee shall sell, serve or deliver or allow, permit or suffer the sale, service or delivery of any alcoholic beverage, directly or indirectly, to any person under the age of twenty-one (21) years or to any person actually or apparently intoxicated, or allow, permit or suffer the consumption of any alcoholic beverage by any such person in or upon the licensed premises."
*436 The appellants contend that the minors were not qualified as experts to recognize the beverage served them as beer having an alcoholic content prohibited by the statute; that there was no competent evidence before the Director that the appellants had served alcoholic beverages to any of the six minors and, therefore, the suspension of license imposed as a punishment by the Director should be reversed.
R.S. 33:1-1, as amended by L. 1953, c. 32, provides, inter alia:
"For the purpose of this chapter, the following words and terms shall be deemed to have the meanings herein given to them:

* * * * * * * *
b. `Alcoholic beverage.' Any fluid * * * having an alcoholic content of more than one-half of one per centum (1/2 of 1%) by volume, including alcohol, beer, lager beer, ale, porter * * *."
And R.S. 33:1-1.1 further provides:
"In any proceeding for any violation of this chapter * * * any alcohol, beer, lager beer, ale, porter * * * shall be presumed * * * to contain more than one-half of one per cent of alcohol by volume."
As heretofore stated, the minors testified that they ordered beer by the glass and that in response to their orders Holmes served them and received payment. There is an implication that a purchaser has received that which he has ordered and paid for. State v. Marks, 65 N.J.L. 84, 87 (Sup. Ct. 1900); Lewinsohn v. U.S., 278 F. 421, 426 (C.C.A. 7 1921); 48 C.J.S., Intoxicating Liquors, § 371(a), p. 548 and § 371(c), p. 549.
We are of the opinion that in this day and age where, through the mediums of radio, television, magazines, newspapers and other propagandizing facilities, the public is introduced to the sensual experiences of the advertised article and, in particular, beer and other alcoholic beverages, the listening, viewing and reading public become aware of these products quite early in life. In addition, we would expect that the minors, in the matter sub judice, being *437 normally subjected to the aforementioned mediums and having been frequenters of appellants' tavern on prior occasions and being known to the bartender, were not unaware of beer nor hampered in their ready recognition that the beverage received was that advertised and generally known to be beer.
The fact that "beer" is presumed to contain alcohol is not a novel principle to the courts of this State. In the case of Murphy v. Inhabitants of Montclair Tp., 39 N.J.L. 673 (Sup. Ct. 1877), the issue was the alleged violation of statute prohibiting sale of "ale, porter, beer or other malt or spirituous liquors as a beverage," without a license. The court stated at page 675:
"The words `ale, porter, beer,' when used in statutes relative to licenses, have no uncertain meaning. Each means a certain liquor made from malt, containing a certain percentage of alcohol.
Had the state of demand charged the sale of two glasses of porter, it would hardly have been seriously argued that an assertion that it was a malt or spirituous liquor, would have been essential. But it is said that beer may mean either a malt liquor or an innocent beverage, known as spruce beer, small beer, ginger beer, etc.
I think there is nothing in this, for even if the court can judicially recognize the existence of the various distinctions in the quality of these beverages, yet the word `beer,' as here used, has a well-defined signification. The words `by night,' in the Crimes Act, (sec. 93,) have no more a distinctly ascertained meaning than either of these words, when used as here in an act concerning licenses.
As there is no need of specifying that `by night' was meant the portion of the natural light within the twilights, (State v. Robinson, 6 Vroom [71] 73,) so, in this instance, there is no need of asserting that the word `beer' meant what the word usually implies when used in statutes to regulate the selling of malt or spirituous liquors. * * *"
Cf. State of Oregon v. Billups, 63 Or. 277, 127 P. 686, 48 L.R.A., N.S., 309 (1912). Other jurisdictions hold to this viewpoint. Williams v. State, 73 Ga. App. 421, 36 S.E.2d 839 (Ct. App. 1946); State v. Schrader, 243 Iowa 978, 55 N.W.2d 232 (Sup. Ct. 1952); Barnes v. Commonwealth, 305 Ky. 481, 204 S.W.2d 801 (Ct. App. 1947); Bell v. State, 142 Tex. Cr. R. 390, 154 S.W.2d 650 (Ct. Cr. App. 1941).
*438 We find decisions holding that technical proof may be required to establish the alcoholic quantity of beer where there is evidence that the beverage was "qualified beer," i.e., spruce beer, small beer, ginger beer, near beer and the like, but where there is no evidence that the beverage is other than that generally known as "beer" the courts have held the implied alcoholic character to be recognized and judicially noticeable. Berry v. United States, 275 F. 680 (C.C.A. 7 1921) ("some sort of liquid"); Keen v. United States, 11 F.2d 260 (C.C.A. 8 1926) ("home brew beer"). As to the connotation of beer in its unrestricted sense see Murphy v. Montclair, supra; People of State of Michigan v. Anderson, 159 Mich. 185, 123 N.W. 605, 25 L.R.A., N.S., 446; State of Oregon v. Billups, 63 Or. 277, 127 P. 686, 48 L.R.A., N.S., 308; 5 Words and Phrases, Beer, 257; Black, Intoxicating Liquors, sec. 17, page 19.
In addition, "In any proceeding for any violation of this chapter * * * any alcohol, beer, lager beer, ale, porter * * * shall be presumed * * * to contain more than one-half of one per cent of alcohol by volume." (R.S. 33:1-1.1), and possessing this character, the sale of such beverage to minors would be in violation of Alcoholic Beverage Control regulations.
An interesting decision, and quite pertinent here, is that of the Supreme Court of Wisconsin in Briffitt v. State, 58 Wis. 39, 16 N.W. 39, 40, 46 Am. Rep. 621 (Sup. Ct. 1883), stating:
"* * * malt liquor, as ale or beer, was made and used as a beverage before the time of Herodotus, and has continued to be made and used all along down the ages, and in various countries, until the present time. At the present time we all know that this malt liquor, under the generic name of `beer,' is made and used in most European countries, and in our own, and is a common beverage. As long as laws for licensing the sale of intoxicating liquors have existed, brandy, whisky, gin, rum, and other alcoholic liquids have been held to be intoxicating liquors per se; and why? Simply because it is within the common knowledge and ordinary understanding that they are intoxicating liquors. By this rule of common knowledge courts take judicial notice that certain things are verities, without proof; * * *. If a witness on the stand were asked *439 whether whisky is intoxicating, he would be apt to smile as at a joke, and an intelligent witness, when asked the same question in relation to beer, might smile with equal reason.
* * * It is true that, to a limited extent, there are other kinds of beer, or of liquor called beer, such as small beer, spruce beer, ginger beer, etc., but such definitions are placed as remote and special, and not primary or general. So it may be said of other substances having a common name and meaning, such as milk or tea. * * * When asked to take a drink of milk or cup of tea, it would not be necessary to prove what is meant. Why is it more necessary to prove what is meant by a glass or drink of beer? When beer is called for at the bar, in a saloon or hotel, the bartender would know at once, from the common use of the word, that strong beer  a spirituous or intoxicating beer  was wanted; and if any other kind was wanted, the word would be qualified, and the particular kind would be named, as root beer or small beer, etc. When, therefore, the word `beer' is used in court by a witness, the court will take judicial notice that it means a malt and an intoxicating liquor, or such meaning will be a presumption of fact, and in the meaning of the word itself there will be prima facie proof that it is malt or intoxicating liquor that is meant."
Clearly, there was sufficient evidence to support the Director's findings that the appellants unlawfully had served the minors an alcoholic beverage in violation of the Regulation.
The order is affirmed.