STATE OF MONTANA, PLAINTIFF AND RESPONDENT, v. JOHN WILD AND IDA WILD, DEFENDANTS AND APPELLANTS.

No. 9618.

Submitted June 19, 1956. Decided December 15, 1956.

305 Pac. (2d) 325.

Messrs. Loble & Loble and Mr. Gene A. Picotte, Helena, for appellants.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Hubert J. Massman, Asst. Atty. Gen., Jr. John C. Harrison, County Atty., and Mr. Clarence Hanley, Deputy County Atty., Helena, for respondent.

MR. CHIEF JUSTICE ADAIR:

The defendants John Wild and Ida Wild have appealed from a judgment of conviction entered upon the verdict of a jury finding them guilty of wilfully and unlawfully selling intoxicating liquor to William Long, a high school boy of the age of fifteen years and from an order denying defendants' motion for a new trial.

The information filed in the district court reads:

"In the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark, on this 3rd day of May, A.D., 1955, in the name and on behalf and by authority of the State of Montana, John Wild and Ida Wild *is* accused by the County Attorney of Lewis and Clark County, Montana, by this information of the crime of misdemeanor, selling liquor to a minor committed as follows: That

at the County of Lewis and Clark, in the State of Montana, on or about the 11th day of December A.D. 1954, and before the filing of this information, the said John Wild and Ida Wild did wilfully and unlawfully, at the Nite Owl, a licensed retail beer and liquor establishment, situated west of the City of Helena, County of Lewis and Clark, State of Montana, on U.S. Highway No. 10 N. by and through Ella Mae Nemeck, a bartender employee of said defendants, sell, deliver and cause and permit to be sold and delivered intoxicating liquors to one William Long, a person under the age of twenty-one years, to-wit: of the age of fifteen years, said defendant being then and there the owners, operators and licensees of said Nite Owl, and duly licensed by the State of Montana to sell beer and liquor at retail, contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the State of Montana.''

The defendants filed separate demurrers to this information reading the same except as to the name of the defendant. The one by John Wild reads:

''Comes now John Wild, one of the defendants in the above entitled cause, and demurs to the Information on file herein, upon the ground that it appears upon the face thereof:

''1.   That the facts stated do not constitute a public offense.

''2.   That said Information contains matter which constitutes a legal bar to the prosecution, it being alleged that the defendant was duly licensed by the State of Montana to sell beer and liquor at retail, and accordingly, it affirmatively appears that original jurisdiction of the offense charged is vested in the justice's court and not in the above entitled court.''

Following argument by respective counsel the aforesaid demurrers were, by the court, disallowed.

Each defendant also filed a separate plea that such defendant had once been in jeopardy for the offense charged by virtue of a complaint filed in the justice of the peace court by the county probation officer. Each plea of prior jeopardy was also denied by the district court.

Next each defendant entered a plea of not guilty, and thereafter both were tried by jury. At the close of the state's evidence defendants' counsel moved for a dismissal of the action for these reasons, viz.:

"1) That the Information does not state facts sufficient to cause a public offense; 2) that the Information contains matters which constitute a bar to the prosecution, it being alleged that the defendants were duly licensed by the State of Montana to sell beer and liquor at retail, and original jurisdiction of the offense charged is vested in the Justice Court and not in the District Court; 3) that the evidence introduced does not show facts sufficient to prove the commission of any public offense whatsoever; 4) that the evidence offered discloses facts of which this Court, the District Court does not have jurisdiction, but which facts would be applicable only to prosecution in the Justice Court; 5) that upon all of the evidence here offered, there is no proof of the commission of a public offense by the dedendants, or either of them; 6) that as to each of the defendants, we ask for dismissial on the ground of once in jeopardy, for an offense charged and as set forth in the plea heretofore entered by each of the defendants, orally and in writing.

"The foregoing motion affirmatively shows that if any offense were committed, the witness Long was an accomplice to such offense and that there is no evidence of a corroborative nature to prove other facts, and therefore, the cause cannot be properly considered by the jury; and the foregoing motion is made separately on each ground enumerated."

The trial court denied the above motion whereupon, after hearing all the evidence, the instructions of the court and arguments of counsel, the jury returned a verdict of guilty, as charged, leaving the punishment to be fixed by the court. Thereafter the defendants interposed the following motion for arrest of judgment, viz.:

"Come now the defendants above named and move and apply to the court that no judbment be rendered on the verdict of guilty heretofore returned herein, upon the following grounds:

"1. That the facts stated in the information on file herein do not constitute a public offense.

"2. That said information contains matter which constituted and did constitute a legal bar to the prosecution, it being alleged that the defendants were duly licensed by the State of Montana to sell beer and liquor at retail, and accordingly, it affirmatively appears that original jurisdiction of the offense charged is vested in the Justice's Court, and not in the above-entitled court."

The foregoing motion being disallowed the trial court imposed a fine of $250 upon each defendant.

Defendants next interposed a motion for a new trial and such motion was denied, whereupon the defendants appealed.

In their brief on this appeal counsel for the defendants have set up only thirty-four specifications of error. An examination of this long list of specifications discloses that most of them are based upon defendants' contention that the provisions of Chapter 143, Laws of 1949 [now sections 94-35-106 and 94-35-106.1 of insert to Title 94 of 1947 Codes] were repealed by subsequent legislation.

Section 2 of Chapter 71, Laws of 1953, provides: "All acts and parts of acts in conflict herewith are hereby repealed."

Section 2 of Chapter 143, Laws of 1949, dealing with the offense of selling liquor to minors, provides: "In cases of prosecution for first offenses under this act, the justice courts and district courts of the State of Montana shall have concurrent original jurisdiction. In all other cases the district courts of the State of Montana shall have exclusive original jurisdiction of the provisions of this act."

There is nothing in the amendment effected by said Chapter 71, Laws of 1953, which conflicts with the above-quoted section 2 of Chapter 2 of Chapter 143, Laws of 1949. This amendment of said Chapter 143, supra, is governed by the provisions of R.C.M. 1947, section 43-510, which provide: *"Effect of amendment.* Where a section or a part of a statute is amended, it is not to be considered as having been repealed and re-enacted

in the amended form, *but the portions which are not altered are to be considered as having been the law from the time when they were enacted,* and the new provisions are to be considered as having been enacted at the time of the amendment." (Emphasis supplied.)

In State v. Yale Oil Corporation, 88 Mont. 506, 513, 295, Pac. 255, 257, the court said: "The true rule, in this state, is that, where a section or a part of a statute is amended, it is not to be considered as repealed and enacted in its new form. The portions which are not amended are considered to have been in force from the time of the first enactment. Section 93, Rev. Cides 1921; [now section 43-510, supra] Snidow v. Montana Home for the Aged, 88 Mont. 337, 292 Pac. 722, 723. There has, therefore, been neither implied nor express repeal of the measure under which this action was instituted, and, consequently, the complaint states a cause of action." See also Blackford v. Judith Basin County, 109 Mont. 578, 587, 98 Pas (2d) 872, 126 A.L.R. 639; State ex rel. State Board of Equalization v. Jacobson, 107 Mont. 461, 464, 86 Pac. (2d) 9; and R.C.M. 1947, section 4-223, providing jurisdiction of the district court in actions for violation of the liquor control law which section is construed in State v. Driscoll, 101 Mont. 348, 350, 54 Pac. (2d) 571, wherein a complaint most similar to the information i nthe instant case was held sufficine as against a similar demurrer.

R.C.M. 1947, section 4-207, also a part of the liquor control law was construed in the recent case of State v. Erlandson, 126 Mont. 316, 249 Pac. (2d) 794, 796, in affirming a judgment of conviction entered in the district court. There both the information and the evidence were similar to those in the case at bar. In the Erlandson case, supra, this court said:

"It is the law of Montana that 'Upon proof of the fast that an offense against this act has been committed by any person in the employ of *the occupant* of any house, shop, room, or other premises in which the offense is committed, *or by any person who is suffered by the occupant, to be or remain in or upon such*

*house,* shop, room, or *premises or to act in any way for the occupant, the occupant shall prima facie be deemed to be a party to the offense so committed, and shall be liable to the penalties prescribed for the offense as a principal offender, notwithstanding the fact that the offense was committed by a person who is not proved to have committed it under or by the direction of the occupant;* but nothing in this section shall relieve the person actually committing the offense from liability therefor.' R.C.M. 1947, section 4-207. Emphasis supplied. 48 C.J.S., Intoxicating Liquors, section 271, page 388, note 35. * * *

"As a general rule, one person is not liable for the criminal acts of another in which he did not participate either directly or indirectly but there is a class of cases which form an exception to such general rule being cases relating to criminal responsibility for the maintenance of a public nuisance and for the violation of revenue and police regulations committed by one's agent or servant. 'As to these, it is asserted, the principal may be convicted in the absence of proof that he authorized the commission of the crime, and *even in the face of proof that he forbade it.* Among the mostt common cases wherein this exception is noted are those involving a violation of an intoxicating liquor statute. In those cases the almost universal rule is that the owner of a saloon is criminally liable for all violations of the law committed by his agents, although without his knowledge, or *even against his express prohibition'.*" The court there cited twenty cases from various states in support of the above rule.

The record in the Erlandson case discloses that five juveniles had congregated in defendant's tavern; that one of the minors testified that he had purchased "Sloe Gin Collins" from Gladys, the barmaid, and that another minor testified that he purchased two bottles of beer from said barmaid. The defendant Erlandson testified: That for not much more than two weeks the barmaid had worked in defendant's tavern; that on the date charged in the information the defendant was absent from the tavern; and that defendant had given her manager, Pat Griffin, "certain instructions about selling liquor to minors or violating the

law'' but defendant wholly failed to state just what such instructions were.

The trial judge, in sustaining the state's objections to defendants' offered evidence as to whether in the conduct of their tavern that defendants had instructed their employees to ascertain the age of boys visiting the place who appear to be under twenty-one years of age and to refrain from selling liquor to all minors, remarked:

''The Court: In view of the ruling in State v. Erlandson, it is wholly immaterial in a case of this kind. * * * I have not read it within the last hour, but that is my understanding; that is the law in Montana, and that is the position this Court is taking throughout this trial, and if I am in error, it is a case of being in error throughout.''

In the case at bar the testimony of the witness William Long shows that at the time charged in the information he was a student attending the local high school and then of the age of fifteen years. He testified that on the night of December 11, 1954, at around the midnight hour he went into the Nite Owl tavern; that upon entering he walked straight to the bar where he purchased a drink of ginger ale; that he then walked into the dance hall where he seated himself at a table with Larry and Dave; that he there ordered a *vodka* and squirt from Ella Mae Nemeck, a waitress; that he was not asked his age; that the waitress went into the bar and got the drink that he had ordered for which he paid her and then he drank the vodka and squirt; that he knows that a vodka and squirt is a mixture of vodka and squirt.

At the trial Mrs. Ella Mae Nemeck, the waitress, was called into the courtroom, from which, at the request of the defendants, the witnesses had been excluded, and the witness Long then and there identified Mrs. Nemeck as the person who sold him the vodka and squirt and as the one he had paid therefor. The witness Long also testified that he had another drink of vodka and squirt at the Nite Owl that night which was ordered by Larry and then given to Long.

At the time charged in the information the witness Larry was seventeen years of age and a student in the local high school. He testified that on the night of December 11, 1954, he went to the Nite Owl to get drinks; that Jeff O'Connell, Bill Long, Dave Cook, Bob Heath and Tom Kindrick were with him; that they had been to a dance at the Y.M.C.A. and came from there to the Nite Owl in his dad's car between 11:30 p.m. and midnight; that he and Jeff went into the bar where he purchased a vodka and squirt while Jeff got a bottle of beer; that they then went to a table in the dance hall; that he there drank his vodka and squirt and then ordered another one from a woman named Ella Mae Nemeck. Larry identified Mrs. Nemeck when she came into the courtroom at the trial. Larry testified that Mrs. Nemeck had a tray and came to the table to take the order; that the other boy also ordered a vodka and squirt from Mrs. Nemeck; that later Bill Long came in and all moved to another table; that "I had a third vodka and squirt and gave it to him [Bill Long]. I had ordered it. Bill drank it and ordered another one."

At the time charged in the information Jeff O'Connell was fifteen years old and a student in high school. He testified that he was at the Nite Owl on the night of December 11, 1954; that he was with Larry, Bill, Dick, Dave and Bob, all high school boys; that they all had been to a dance at the "Y" and it was about *midnight;* that he and Larry went to the bar and he ordered a beer and Larry ordered vodka and squirt; that he thinks it was the defendant John Wild who served them as he was behind the bar; that they then went into the dance hall to a table and sat down and drank what they had purchased at the bar; that he saw Bill Long there but he did not come to their table; that his mother, Mrs. Dorothy O'Connell, came into the dance hall just after the boys had finished their drinks; that Mrs. O'Connell came over and told him she did not want him drinking there; that thereupon he left but later returned at which time he talked to the defendant Ida Wild who suggested that he leave the Nite Owl; that he saw his mother, Mrs. O'Con-

nell, talking to Ida Wild before he talked to Mrs. Wild, and that he left the place a few minutes after talking to the defendant Ida Wild.

Mrs. Dorothy O'Connell, the mother of Jeff, testified she was Jeff's mother; that at the time charged in the information Jeff was fifteen years old; that at about midnight on December 11, 1954, she was at the Nite Owl where she saw Larry Borsberry, Dick Cook and Bill Long who went around with her son at times; that a little later she recognized her son Jeff with two other boys at a table in the Nite Owl and observed that the boys were drinking drinks that the waitress brought them; that she (Mrs. O'Connell) did not know the name of the waitress but later identified Mrs. Ella Mae Nemeck as the woman who served the boys at the Nite Owl that night; that she does not know just what the drinks were there served to the boys except that they were not milk, water or ginger ale.

The foregoing is a brief review of the state's evidence. Following the denial of defendant's motion for the dismissal of the action, the defendants introduced their evidence.

Basil Fordyce testified that he was employed at Fort Harrison and occasionally tends bar at the Nite Owl, generally once a week; that he saw the boys O'Connell, Borsberry, Long and Cook in the justice court at the trial in that court in April; that he had not to his knowledge seen any of them before; that he was tending bar at the Nite Owl on Saturday night, December 11, 1954, starting at 6:00 p.m., and ending at 2:00 a.m.; that Mr. Wild worked with him part of the time; that he never sold any liquor, beer or vodka to any of these boys and never saw them at any time.

The court sustained the state's objections to the offered evidence of the defendants to the effect that the witness had been instructed by Mr. Wild to ascertain the age of the boys who appear to be under the age of twenty-one. The trial court also sustained objections to defendants' written offer of proof to the effect that the witness had been instructed that under no con-

ditions was he to sell intoxicating liquor to a person under the age of twenty-one years.

The state objected to this offer of proof "on the ground it's incompetent, irrelevant and immaterial." This objection was sustained because of the decision in the case of State v. Erlandson, 126 Mont. 316, 249 Pac. (2d) 794, above quited.

Mrs. Ella Mae Nemeck testified that she first went to work at the Nite Owl in April 1953. She was asked if she had received instructions not to sell liquor to minors. The state's objection to this question on the ground that it was incompetent, irrelevant and immaterial was sustained, as was also defendants' written offer of proof. Mrs. Nemeck also testified that she was present at the trial had before A. J. White, a justice of the peace, at which the defendants were charged with having sold liquor to the boy Larry Borsberry. Mrs. Nemeck further testified that she did not see the boys Borsberry, O'Connell and Long on the night of December 11, 1954, when she was working as a waitress at the Nite Owl; that on that night Helen Boushay also worked at the tables in the dance hall. Mrs. Nemeck also testified that she never sold any liquor to either of these boys who had identified her as the person who sold them liquor; that Mrs. O'Connell came up to her and tapped her on the shoulder and said, "Do you know minors are being served in here?" and she replied, "Who, where?" And Mrs. O'Connell then said, "Right over there at the table." That Mrs. Nemeck then said, "I'm not serving that table." Mrs. Nemeck testified that at that time the defendant Mrs. Wild was coming through the dance hall whereupon Mrs. Nemeck said, "Here's Mrs. Wild, she'll help you with it"; that Mrs. O'Connell talked to Mrs. Wild and then left; that Mrs. Wild then asked, "Where was the table" and Mrs. Nemeck replied, "Over there" whereupon they both walked towards this table; that none of the boys mentioned was then sitting there; that Mrs. Nemeck did talk to one boy sitting at a table, but that she is not now able to identify him; that the defendant Mrs. Wild talked to this boy at that table. Mrs. Nemeck was then asked,

"Did you see more than one there?" to which she answered, "I wouldn't say I did." She testified it is difficult to remember the particular people at any one night in a place, and that they were very busy that night, "That is all I know about this case * * * I did not sell liquor to any of these boys in question."

On cross-examination Mrs. Nemeck testified that there was a very big crowd there that evening about 12:00 p.m. "Q. When she called your attention to the fact the boys were being sold liquor, did she point to these boys? A. At this table, yes. Q. How many boys were at this table? A. I don't know." The boy Mrs. O'Connell pointed out was her son and the only boy sitting at that table. That on the night of December 11, 1954, there was an enormous crowd at the Nite Owl.

Ida Wild testified that the dance hall has about 125 chairs in it and 25 or 30 tables; that Ella Mae Nemeck worked the tables on the right side and Helen Boushay the tables on the left side; that she was cooking in the kitchen and came out about two o'clock of the night of December 11, 1954; "Q. When you came out, tell us what happened about Ella Mae coming to you and this lady, and give us the conversation. A. Well, I came out of the kitchen and suddenly this woman came to me —I was coming across the dance floor and I probably had been at the bandstand, and she was very angry and said to me, 'You're serving minors.' And I said, 'Where?' And she pointed to this table and she said, 'That's my son and he's only 15 years old'. So I said to her, 'Well, if it's your son, you should take him out of here!' And she turned around and left me there. I thought I should have talked to her longer but she left, and I went to the table and told this boy to leave and he got up and left, and it was two o'clock, everybody was leaving the place."

The defendant Ida Wild testified that she does not remember what the boy looked like; that she does not remember whether there were any other boys at the particular table; that it was difficult for her to recall who had been in the Nite Owl on the night of December 11, 1954, as it was a very busy place

then. Her counsel then asked it she had always been careful to see that anyone of questionable age is required to give proper identification, to which question the state objected on the same grounds made and sustained to similar questions put to the preceding witnesses for defendants as well as the offers of proof thereupon submitted.

On cross-examination Ida Wild said it was very difficult to recall events of December 11, 1954; that while she was working in the kitchen most of the evening after nine o'clock, she probably was in the dance hall a few times before twelve o'clock that night but does not remember seeing any of these boys there.

John Wild testified that he and his wife owned and operated the Nite Owl which on March 1, 1946, they purchased for $40,-000; that on December 11, 1954, there were as many as two hundred persons in this dance hall; that he has fourteen or fifteen bar stools in the barroom but there are times when fifty or seventy-five people are crowded in there so he can hardly move around, and that he watched to see the ages of people who came into the place. The record shows the following questions put to John Wild by his counsel together with the state's objections thereto and the court's ruling, viz.:

"Q. What do you do if they appear to be below age?

"Mr. Hanley: We object to that as incompetent, irrelevant and immaterial.

"The Court: Sustained.

"Q. What do you do with reference to your employees when they come to work, as to whether you instruct them that they should require identification before they sell to anyone appearing under age?

"Mr. Hanley: Same objection; it's incompetent, irrelevant and immaterial.

"The Court: Sustained."

Defendant's offer of proof on this matter was also objected to and objection sustained.

John Wild further testified that he serves the best meals in

the country and endeavors to run an orderly place in a good manner so people will enjoy themselves.

To questions put to him by his counsel John Wild made answer as follows:

"Q. One of these boys said you sold him beer—I think O'-Connell said that—and you sold another boy, Borsberry, vodka and squirt; did you do that? A. Not that I can recall of.

"Q. Did you sell them anything? A. No."

John Wild further testified that he does not recall seeing these boys at any time before he saw them in the justice of the peace court, after he had been complained against; that Mr. Fordyce was tending bar for him on the night of December 11, 1954; that he, Wild, also was there between *nine and ten-thirty that night* but that he did not see Fordyce selling liquor to boys who looked like the boys who had testified against him.

It should here be noted that the record shows that the boys did not go to the Nite Owl until about twelve o'clock midnight. The record further shows that after the defendants closed up that night Mrs. Wild told her husband that some mother had complained to her because her son was at the Nite Owl, and that the mother seemed very angry and perturbed about the matter.

On cross-examination John Wild testified that on December 11, 1954, he also was working behind the bar, and that Mrs. Wild was in the bar about a dozen times but that he does not recall that Mrs. Wild sometime near twelve o'clock midnight came to the bar and called to his attention that two boys were at the bar who should not be served, and that he does not remember that his wife so testified at the trial in the justice of the peace court.

The above is a brief review of the evidence submitted by the defendants.

The state offered twenty instructions and the defendants twenty-five. Objections were sustained to some instructions offered by the state and to some offered by defendants. The court then gave the jury twenty-one instructions. The state's

offered instructions 3, 4 and 5 were given without objection as the court's instructions 4, 5 and 6. They read as follows:

"Instruction No. 4. To constitute the offense charged in this case the intent alleged in the information is necessary to be proved, but direct and positive testimony is not necessary to prove the intent; it may be inferred from the evidence if there are any facts proved which satisfy you, beyond a reasonable doubt, of its existence."

"Instruction No. 5. The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity."

"Instruction No. 6. The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact in this case. A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he or she testifies, by the character of his or her testimony, or his or her motives, or by contradictory evidence, and the jury are the exclusive judges of his or her credibility."

Defendants objected to the giving of the state's offered instruction 9, being the court's instruction 11 and reading:

"Instruction No. 11. You are instructed that if you believe from all the evidence in this case, beyond a reasonable doubt, that the witness, William Long, was sold or given liquor at the Nite Owl, a tavern located west of the City of Helena, Lewis and Clark County, Montana, on or about the 11th day of December, 1954, by one Ella Mae Nemeck, and that at said time and place the said Ella Mae Nemeck was an employee of the defendants, John Wild and Ida Wild, owners and operators of said Nite Owl Tavern, and that at said time and place the said William Long was under the age of twenty-one (21) years, then you must return a verdict of guilty against said defendants."

Defendants objected to the state's instruction 11 given as the court's instruction 14 and reading:

"Instruction No. 14. You are instructed that Vodka squirt and Vodka Collins as used in the testimony in this case are intoxicating liquors."

Defendants objected to the state's instruction 7, given as the court's instruction 10 and reading:

"Instruction No. 10. You are instructed that the law of Montana prohibits any licensee, or any other person, or his or her employee, or employees, from selling, giving away, or causing to be sold or given away any liquor, beer or wine, to any person under the age of twenty-one (21) years."

The trial court also gave defendants' instructions 12 and 13 as offered by defendants and reading as follows:

"Instruction No. 12. You are instructed that the fact that John Wild and Ida Wild are the defendants is not, of itself, sufficient to impeach or discredit their testimony. The law makes them competent witnesses in the case, and their evidence, like all other evidence in the case, under th instructions of the court, should be considered by you. And if, from all the evidence in the case, including that of the defendants, there is a reasonable doube in your minds as to the guilt of the defendants, it is your duty to give them the benefit of that doubt, and vote for their acquittal."

"Instruction No. 13. You are instructed that a defendant in a criminal case is never bound to establish his innocence by evidence beyond a reasonable doubt, nor even by a preponderance of the evidence; it is sufficient if there arises from the evidence in the whole case a reasonable doubt as to the defendant's guilt. In such event, it is the duty of the jury to find the defendant not guilty."

Counsel for appellants contend there is no evidence to prove ██ vodka and squirt is an intoxicating liquor. It is true that R.C.M. 1947, section 94-35-107, does not use the word "vodka" but it does say, after naming certain liquors, "and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not, and by whatever name called *containing one-*

*half of one per centum,* or more of alcohol by volume which are fit for use for beverage purposes * * *''. (Emphasis supplied.)

The boy Bill Long testified that he paid ten cents for a glass of ginger ale. The boy Jeff O'Connell testified he had paid thirty-five or forty-five cents for a glass of vodka and squirt. Ella Nemeck testified vodka and squirt sells for fifty cents a glass and that after 9:00 in the evening beer sells for thirty-five or forty cents.

Vodka is a well-recognized potent intoxicating liquor. It possesses much power and authority. Even when mixed with squirt it continues to pack somewhat of a wallop. Webster's New International Dictionary, (2d) ed., defines ''vodka'' as, ''A Russian distilled *alcoholic liquor* commonly made from rye, sometimes from potatoes, and rarely from barley. Sometimes, in Russia, any kind of whisky, brandy, etc.'' (Emphasis supplied.)

Funk & Wagnalls Standard Dictionary defines ''vodka'' as, ''A distilled spirituous liquor, usually made from rye, sometimes from barley or potatoes; also, any spirituous liquor, as brandy, gin, etc.'' And the same authority defines ''spirituous'' as ''Containing alcohol; especially, containing a large percentage of alcohol.'' Funk & Wagnalls New Standard Encyclopedia, Vol. 24, page 405, in defining ''vodka'' said: ''Russian brandy, a strong spirituous beverage * * * Vodka as manufactured contains about 90 per cent of alcohol, but is diluted to 60 and 40.''

As heretofore shown, R.C.M. 1947, section 94-35-107, makes any beverage containing *one-half of one per centum* or more of alcohol, an intoxicating liquor. Under R.C.M. 1947, section 93-501-1, the court may take judicial notice of the commonly accepted and generally understood definitions of the word ''vodka.'' Compare, State v. Winter, 129 Mont. 207, 285 Pac. (2d) 149; Homes v. Cavicchia, 29 N.J. Super. 434, 102 A. (2d) 788; People v. Silva, 67 Cal. App. 351, 227 Pac. 976; People v. Gray, 67 Cal. App. 549, 288 Pac. 358; 31 C.J.S., Evidence, section 67, page 648, and 20 Am. Jur., Evidence, section 67, page 89.

By its instruction 14 supra, the trial court correctly in-

structed the jury that the drink known as "Vodka Squirt" and "Vodka Collins" mentioned in the testimony are intoxicating liquors.

R.C.M. 1947, section 93-2501-2, says, "* * * Whenever the knowledge of the court is, by this code, made evidence of a fact, the court is to declare such knowledge to the jury, who are bound to accept it." The court followed this section of our codes in giving its instruction 14.

This court has carefully considered the information, the evi- ▉▉▉ ▉▉▉ which is somewhat conflicting, the instructions requested by both the state and defendants, and the instructions given by the trial court, and holds: That the information was sufficient; that there was sufficient substantial evidence when believed by the jury to sustain its verdict of guilty. The jury saw and heard these high school boys as they gave their testimony. The jury heard and considered the instructions given by the trial court and quoted above, in part, which in our opinion fully cover the questions presented by the evidence and the law applicable thereto. These instructions must be considered as a whole. State v. Wong Sun, 114 Mont. 185, 198, 133 Pac. (2d) 761. We find no prejudicial error in the record before us. Accordingly the judgement of conviction and the order denying the appellants a new trial are affirmed.

MR. JUSTICES ANGSTMAN and BOTTOMLY, concur.

MR. JUSTICE DAVIS, dissents.